IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William W. Watkins,             :
           Petitioner       :
                        :   No. 1280 C.D. 2017
            v.              :
                        :   Submitted: December 29, 2017
Workers' Compensation Appeal  :
Board (Caretti, Inc.),        :
           Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: April 2, 2018

William W. Watkins (Claimant) petitions for review of the July 19, 2017 order of the Workers' Compensation Appeal Board (Board) affirming a decision of the Workers' Compensation Judge (WCJ) terminating Claimant's benefits effective June 30, 2015.

**Facts and Procedural History**

Claimant was employed by Caretti, Inc. (Employer) as a mason. (Notes of Testimony (N.T.), 12/21/15, at 11.) On June 3, 2014, while working for Employer, Claimant was struck by a stone, weighing about 60 pounds, that fell from scaffolding above him. (WCJ's Finding of Fact (F.F.) No. 4; N.T., 12/21/15, at 10-11.) Pursuant to a notice of temporary compensation payable (NTCP), Claimant began receiving

workers' compensation benefits. The NTCP described Claimant's injury as "low back, [left] hand, [left] shoulder strain/sprain bruised contusion." (Certified Record (C.R.) at Item No. 24; Notice of Temporary Compensation Payable.)

On August 7, 2015, Employer filed a termination petition alleging that, as of June 30, 2015, Claimant was fully recovered and able to return to unrestricted work. (C.R. at Item No. 2; Employer's Petition to Terminate.) Claimant filed an answer to the termination petition, (C.R. at Item No. 6; Claimant's Answer to Petition to Terminate), and, on August 19, 2015, he filed a review petition alleging that the NTCP incorrectly described his work injury. (C.R. at Item No. 4; Claimant's Review Petition.) The WCJ conducted hearings to consider both petitions on September 9, 2015, and December 21, 2015. At the September 9 hearing, Claimant sought to amend the description of injury to include a "herniated disc at the L3-L4 level with an aggravation of lumbar stenosis and degenerative disc disease." (F.F. No. 3; N.T., 9/9/15, at 6-7.) At the December 21 hearing, Claimant attempted to amend the injury description to include a cervical injury and surgery. (F.F. No. 3; N.T., 12/21/15, at 6-7.)

Through the testimony presented at the December 21 hearing, Claimant admitted that he had back surgery in 2000 for a lumbar problem at L3-L4. (F.F. No. 5; N.T., 12/21/15, at 12.) Because the disc "re-herniated," he had a second surgery at the University of Pennsylvania. (*Id.*) In April 2010, Claimant sought treatment from Dr. Weis for a herniated disc in his lumbar spine, resulting in low back pain on his right side, which radiated to his right buttock and lateral hip and down the anterior aspect of his right quadriceps. (*Id.*) Claimant also underwent decompression to a radial nerve in his left arm by Dr. Talsania prior to his work injury. (F.F. No. 5; N.T., 12/21/15, at 13.)

At the time of the work injury, Claimant sought treatment from James Sunday, M.D., at Coordinated Health. (N.T., 12/21/15, at 20.) Claimant returned to work on June 3, 2014, and worked through June 11, 2014, when he again treated with Dr. Sunday. (F.F. No. 8; Board's op. at 4; N.T., 12/21/15, at 21.) At the June 11, 2014 appointment, Claimant reported that, while his neck and shoulder were feeling better, he was starting to suffer from low back pain. (F.F. No. 9; N.T., 12/21/15, at 22.) Dr. Sunday's notes report that Claimant acknowledged a history of chronic low back pain, but did not report any neck pain or pain radiating down his arms. (F.F. No. 9; N.T., 12/21/15, at 24.)

On July 1, 2015, Claimant began treating with Dr. Li, with symptoms of low back pain and right leg pain. (F.F. No. 13; C.R. at Item No. 19; Deposition of P. Mark Li, M.D. (Li deposition), at 11-12.) Dr. Li's original notes do not document pain in Claimant's neck or arms. (F.F. No. 13; N.T., 12/21/15, at 30.) In fact, Dr. Li did not examine Claimant's neck at the July 1 appointment because Claimant did not report any neck pain. (F.F. Nos. 13; Board's op. at 4; N.T., 12/21/15, at 31; Li deposition, at 37-38.) It was not until August 26, 2015, that Claimant called Dr. Li's office complaining of neck pain. (F.F. No. 14; Li deposition, at 15.) Dr. Li first examined Claimant's neck on September 11, 2015. (*Id.*)

At the December 21, 2015 hearing, Claimant presented testimony regarding his current symptoms. Claimant testified that he suffers from headaches later in the day; experiences pain in his neck, down through the back of his right arm (and left arm, if he coughs or sneezes); and has back and leg pain, with numbness in his right foot. (F.F. No. 7; N.T., 12/21/15, at 18.) Claimant also noted that his left shoulder feels "okay," but hurts at times; his left hand still feels a bit "uncoordinated" or

"unresponsive"; and he still has pain in his right quad, with his right foot feeling numb and his left foot feeling "uncoordinated." (*Id.*)

On cross-examination, Claimant acknowledged that, immediately after the injury, he told Dr. Sunday that the rock struck his hardhat, left shoulder, and left hand. (F.F. No. 8; N.T., 12/21/15, at 20.) Dr. Sunday examined Claimant, and Claimant returned to his full-duty job without restriction from June 3, 2014 to June 11, 2014. (F.F. No. 8; N.T., 12/21/15, at 21.) Claimant denies telling Dr. Sunday that he suffered from chronic back pain. (F.F. No. 9; N.T., 12/21/15, at 22.) Regardless, Claimant did not report neck or radiating arm pain. (F.F. No. 9; N.T., 12/21/15, at 24.)

Employer presented the deposition testimony of Stephen P. Banco, M.D., an orthopedic spinal surgeon. Dr. Banco examined Claimant on June 30, 2015. (C.R. at Item No. 22; Deposition of Stephen P. Banco M.D. (Banco deposition), at 11-12.) He testified that Claimant reported symptoms of low back pain and right leg pain, and that Claimant denied having a neck pain or headache. (F.F. No. 15-16; Banco deposition, at 6-7.) Dr. Banco testified that he reviewed Claimant's medical records, noting a surgical history of two prior lumbar discectomies, a left radial nerve decompression, and anterior cruciate ligament (ACL) reconstruction. (F.F. No. 17; Banco deposition, at 8.) Dr. Banco also reviewed Claimant's magnetic resonance imaging (MRI) scan from July 9, 2014, observing "stenosis at L3 and L4, and L4 and L5 with significant epidural fibrosis from his prior discectomies" and "significant disc degeneration secondary to [Claimant's prior] post-operative infection." (Banco deposition, at 10; F.F. No. 19.) After the June 30 examination and review of Claimant's numerous medical records and diagnostic study results,[1] Dr. Banco opined that

---

[1] In reaching his diagnosis of Claimant, Dr. Banco testified that he reviewed the following medical records and diagnostic studies as part of his examination of Claimant: Office notes from Dr.

Claimant suffered from "a work-related low back strain, a left hand sprain, and a left shoulder contusion, and . . . he had fully recovered from those injuries." (Banco deposition, at 12; F.F. No. 21; Board's op. at 2.) Dr. Banco explained that Claimant's MRI showed no evidence of an acute injury or herniation; rather he noticed significant stenosis and epidural fibrosis, neither of which was related to his work injury. (F.F. No. 21; Board's op. at 3; Banco deposition, at 12-13.) He opined that "since there was no acute injury and there [was] the obvious degeneration that you get ten years after having two lumbar surgeries, this was all a degenerative process and not an acute work-related process." (Banco deposition, at 13; F.F. No. 21.) Ultimately, he opined that, as of June 30, 2015, Claimant required no physical restrictions or limitations, or further medical treatment, and he could return to full-duty work. (F.F. No. 21-22; Banco deposition, at 13-14.)

Claimant presented the deposition testimony of Dr. Li, who did not examine Claimant until almost one year after the work injury occurred. Dr. Li testified that, during the July 1, 2015 examination, he reviewed Claimant's lumbar MRI scan, which indicated stenosis of the lumbar spine at L3 and L4, and L4 and L5. (F.F. No. 28; Board's op. at 5; Li deposition, at 13.) Dr. Li's examination revealed that Claimant had normal strength in his arms and legs, and a normal gait. (F.F. No. 29; Li deposition, at 13-14.) He ultimately opined that Claimant's symptoms of numbness, tingling, and

---

Fayyazi, Mainline Spine, Dr. Mauthe, VSAS Orthopedics, OAA Orthopedic Specialists, Lehigh Valley Rehabilitation Services, and Pain Specialists of Greater Lehigh Valley, Dr. Robert E. Wertz, Coordinated Health, Dr. James C. Weis, Dr. Eric Holender, and Dr. Rosalie Rehrig; an operative report from Mainline Spine regarding Claimant's lumbar epidural injections received in February and March 2015; a physical therapy report from Blue Mountain Health System; a functional capacity evaluation report from Mobile FCE Consultants, an EMG dated October 9, 2014, from Dr. Mauthe; a lab report from Gnaden Huetten Memorial Hospital; hospital records from Lehigh Valley Health Network and the Center for Specialized Surgery; MRI reports dated April 2, 2010, June 25, 2014, and July 9, 2014; and court documents from the Pennsylvania Department of Labor & Industry. (Banco deposition, at 11-12.)

pain "were due to the severe stenosis that he had at L3-4 and L4-5." (F.F. No. 29; Li deposition, at 14.) To relieve the symptoms, Dr. Li recommended an L3-4 and L4-5 laminectomy. (F.F. No. 29; Li deposition, at 14-15.)

On August 26, 2015, over one month after his initial examination, Claimant called Dr. Li's office to complain of neck pain for the first time. (F.F. No. 30; N.T., 12/21/15, at 31-32; Li deposition, at 15.) A cervical MRI was performed, and Dr. Li testified that the MRI showed cervical myelomalacia, indicating that the spine had been bruised. (F.F. No. 31; Li deposition, at 16.) Dr. Li performed cervical spine surgery on Claimant on November 17, 2015. (F.F. No. 34; Board's op. at 5-6; Li deposition, at 19-20.) Dr. Li ultimately arrived at two diagnoses for Claimant: "myelomalacia or injury to the spinal cord secondary to a traumatic incident dated June 3, 2014, a work-related accident. And exacerbation of symptoms of spinal stenosis also based on injury at the time of that accident." (Li deposition, at 25; F.F. No. 35.) However, Dr. Li acknowledged that Claimant had not informed him of a history of low back problems and radiating leg pain prior to the work injury. (F.F. No. 35; Li deposition, at 34.) Dr. Li testified that, as of March 2, 2016 (the date of his deposition), Claimant was not able to work because he "still [was] not fused and in the healing process from the cervical surgery" and that he was "not fully recovered." (*Id.*, at 30-31.)

The WCJ issued his decision and order dated October 12, 2016, granting the termination petition and denying the review petition. In doing so, the WCJ found Dr. Banco to be credible, but did not find Claimant and Dr. Li credible. (F.F. Nos. 37-40.) Specifically, the WCJ did not find certain testimony of Claimant regarding his initial reports of symptoms to Dr. Li and Dr. Banco to be credible. (F.F. No. 37.) The WCJ accepted Dr. Banco's opinion that Claimant had fully recovered from his work

6

injury.  (F.F. No. 38.)  Claimant timely appealed the October 12, 2016 decision and order to the Board.  On appeal, the Board affirmed.

Claimant timely appealed the Board's decision to this Court.

## Discussion

On appeal to this Court,[2] Claimant argues that his civil rights were violated based on an alleged conflict of interest between his counsel, Gerald Strubinger, Jr., Esq., one of his doctors, Robert W. Mauthe, M.D.,[3] and the WCJ.

By asserting a violation of his civil rights, Claimant is raising a constitutional issue.  However, as aptly noted by Employer in its brief, Claimant failed to raise any such violation in the earlier proceedings.  It is well-settled that this Court "may not consider an issue on appeal unless it is preserved at every stage of the proceeding below."  *Arnold v. Workers' Compensation Appeal Board (Lacour Painting, Inc.)*, 110 A.3d 1063 (Pa. Cmwlth. 2015).  Rule 1551 of the Pennsylvania Rules of Appellate Procedure provides:

> No question shall be heard or considered by the court which was not raised before the government unit except:
>
> (1) Questions involving the validity of a statute.

---

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated.  Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).  The scope of review on questions of law is plenary and the standard of review is *de novo*.  *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

[3] Claimant began treating with Dr. Mauthe in July 2014.  (F.F. No. 11.)  Claimant testified that Dr. Mauthe provided him with pain pills and prescribed physical therapy.  (N.T., 12/21/15, at 13.)  Dr. Mauthe referred Claimant to Dr. Lerman with Mainline Spine.  (*Id.*, at 13-14.)

7

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be so raised, it shall remand the record to the government unit for further consideration of the additional question.

Pa.R.A.P. 1551(a). Furthermore, under section 703(a) of the Administrative Agency Law:

A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

2 Pa.C.S. §703(a).

In this case, Claimant contests neither the validity of a statute, nor the jurisdiction of the Board over the subject matter at hand. Instead, the issue raised by the Claimant—namely, the effectiveness of his counsel in the proceeding before the WCJ—could have been raised before the Board. Therefore, because Claimant did not raise any issue regarding a violation of his constitutional rights before the Board, he has waived such argument on appeal to this Court.

Even if we were to determine that Claimant did not waive his right to raise this constitutional issue, Claimant did not meet his burden to support such a claim. The

8

allegations made by Claimant amount to grievances lodged against his attorney, his doctors, and the WCJ himself. In asserting a conflict of interest between the various participants in this matter, Claimant essentially argues that his counsel and witnesses erred in their presentation of the case. Specifically, for example, he calls into question Dr. Banco's credibility and his attorney's strategy in presenting and admitting evidence into the record. Because an appeal to the Court is not the proper means to address the adequacy of representation by counsel, we will consider Claimant's arguments as a challenge to the WCJ's credibility determinations.

It is a fundamental tenant of workers' compensation law that the WCJ, as the fact-finder, has complete authority over questions of witness credibility and evidentiary weight. *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). For purposes of this Court's review, it is irrelevant whether evidence exists to support contrary findings; rather, if substantial, competent evidence exists to support the WCJ's necessary findings, those findings will not be disturbed on appeal. *Id.* "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). Accordingly, the WCJ has exclusive province over credibility and weight determinations, and may accept or reject the testimony of any witness, in whole or in part. *Verizon Pennsylvania Inc.*, 116 A.3d at 1162. We may overturn a credibility determination "only if it is arbitrary or capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

Here, substantial evidence exists to support the WCJ's findings of fact. Our review of the record demonstrates that the WCJ carefully considered the testimony of both Dr. Banco and Dr. Li, as well as each doctor's medical notes, interpretation of Claimant's test results, and ultimate diagnoses. The evidence shows that each doctor performed a thorough examination of the Claimant. As the Board acknowledged, the WCJ clearly explained each of his findings, which included his reasoning for making the credibility determinations that he did. As such, we shall not disturb those findings on appeal.

**Conclusion**

Based on the foregoing, we conclude that because Claimant did not raise any issue regarding a violation of his constitutional rights before the Board, he waived such argument on appeal to this Court. However, even if we were to consider such argument, Claimant did not meet his burden to demonstrate that his constitutional rights were violated or that the record did not contain substantial evidence to support the WCJ's determinations.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William W. Watkins, | : | |
| Petitioner | : | |
| | : | No. 1280 C.D. 2017 |
| v. | : | |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Caretti, Inc.), | : | |
| Respondent | : | |

## ***ORDER***

AND NOW, this 2nd day of April, 2018, the order of the Workers' Compensation Appeal Board, dated July 19, 2017, is hereby affirmed.

_____

PATRICIA A. McCULLOUGH, Judge