**VERIZON PENNSYLVANIA INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MILLS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 17, 2014.
Decided Feb. 23, 2015.
Publication Ordered June 10, 2015.

Peter M. Harrison, Philadelphia, for petitioner.

Alfred J. Carlson, Philadelphia, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge PATRICIA A. McCULLOUGH.

Verizon Pennsylvania, Inc. (Employer) petitions for review from the April 2, 2014 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying its modification petition. We affirm.

On November 27, 2006, Richard Mills (Claimant) sustained injuries while in the course and scope of employment with Employer. Pursuant to an Agreement of Compensation (Agreement) dated January 16, 2007, Claimant's work-related injury was described as lumbar spine, HNP L5–S1, and degenerative disc disease. (WCJ's Finding of Fact (FOF) No. 1.)

In a decision dated May 25, 2011, the WCJ granted Claimant's review petition and amended the Agreement to include post lumbar decompression and fusion; post laminectomy syndrome; left foot drop; radiculopathy of the left lower extremity; chronic pain; right knee and hip pain; and major depression. In this decision, the WCJ also denied Employer's modification petition because Employer failed to establish that Claimant had reached maximum medical improvement (MMI) as of the date of the Impairment Rating Evaluation (IRE). (WCJ's FOF No. 2.)

On November 21, 2011, Employer filed a second modification petition, alleging that Claimant's total disability benefits should be modified as of October 20, 2011, per the IRE of Francis Scott Carlin, D.O., who determined that Claimant was at MMI with a 44% whole body impairment rating. Claimant filed an answer denying these allegations. (WCJ's FOF No. 3.)

At the hearing, Claimant testified that following his November 27, 2006 work injuries, he underwent back surgery and continues to receive treatment for his injuries. Claimant stated that he sees a neurosurgeon, two orthopedic surgeons, a pain management specialist, and a psychologist. Claimant said that as a result of his injuries, he uses two canes to ambulate and has a brace on his leg that goes from the

bottom of his foot to his upper body. (WCJ's FOF No. 6.)

In support of its modification petition, Employer presented the deposition testimony of Dr. Carlin, which the WCJ summarized in detail. (WCJ's FOF No. 4.) Dr. Carlin is board certified in family practice and has performed approximately thirty-six IREs since 2008. Dr. Carlin stated that Claimant had a diagnosis of chronic pain, underwent a lumbar decompression fusion, was suffering from laminectomy syndrome, a left foot drop and also radiculopathy of the left lower extremity, right knee and right hip pain, as well as depression. Dr. Carlin testified that he conducted an IRE of Claimant on October 20, 2011, and found that he had reached MMI. Dr. Carlin said that he utilized the 6th Edition of the American Medical Association (AMA) Guides, and determined that: impairment of Claimant's lumbar spine was 14%; impairment of Claimant's major depression disorder was 30%; impairment of Claimant's right hip was 2%; and impairment of Claimant's right knee was 5%. Dr. Carlin testified that he then used the Combined Values Chart from the Appendix to the Guides and concluded that Claimant's final whole body impairment was 44%. (WCJ's FOF No. 4.)

In a subsequent addendum report, Dr. Carlin stated that, in making this determination, he did not evaluate Claimant's left foot drop and lower extremity radiculopathy separately from the injury to Claimant's lumbar spine because, under Chapter 17 of the AMA Guides, the impairments for radiculopathy and left foot drop were already incorporated into the rating he used for Claimant's lumbar spine; therefore, there was no reason for him to refer to Chapter 16 of the AMA Guides, which deals with conditions of the lower extremity. (WCJ's FOF No. 4; Ex. D2, Reproduced Record (R.R.) at 256a.)

In rebuttal, Claimant presented the deposition testimony of Lance Yarus, M.D., which the WCJ similarly summarized in detail. (WCJ's FOF No. 5.) Dr. Yarus is board certified in orthopedic surgery, pain management, and disability impairment evaluations. Dr. Yarus stated that he has been conducting IREs for about ten years, averages about five IREs a month in the last two years, and has performed at least 75 to 100 IREs under the 6th Edition of the AMA Guides. Dr. Yarus said that Claimant has reached MMI, and he offered the same individual impairment ratings as Dr. Carlin, except that he determined the impairment rating to Claimant's knee to be 11% and separately rated Claimant's left foot drop in his calculation. Dr. Carlin said that in doing so, he determined that Claimant's left foot drop had an impairment rating of 15% and that he took this specific injury into consideration using table 16–12 of Chapter 16 of the AMA Guides. Dr. Yarus explained that this calculation was appropriate because the table relates to severe motor deficits in the lower extremities and a foot drop qualifies as such. Dr. Yarus further explained that an IRE evaluator has the discretion to evaluate a foot drop as a separate component because it is motor oriented and is not otherwise addressed by Chapter 17 of the AMA Guides. According to Dr. Yarus, Claimant's final whole body impairment was 56% after using the Combined Values Chart. Dr. Yarus explained that his IRE rating was higher than Dr. Carlin's rating in part because Dr. Carlin did not make an impairment rating for Claimant's foot drop. Dr. Yarus emphasized that Claimant's left foot drop was an "adjudicated injury." (WCJ's FOF No. 5; R.R. at 108a–09a, 129a–30a.)

In a decision dated November 6, 2012, the WCJ accepted the testimony of Claimant as credible. (WCJ's FOF No. 9.) The

WCJ thoroughly set forth the testimony of Employer's medical expert, Dr. Carlin, and Claimant's medical expert, Dr. Yarus, (WCJ's FOF Nos. 4, 5), and the WCJ resolved the conflicts within their testimony with the following findings:

7. This [WCJ] has reviewed and considered the entire deposition of Dr. Carlin. His testimony is accepted only to the extent that it is corroborated by Dr. Yarus's more persuasive testimony. Dr. Carlin's IRE rating is rejected as it failed to address all of Claimant's work-related injuries when assessing his whole body impairment.

8. This [WCJ] has reviewed and considered the entire deposition testimony of Dr. Yarus and finds him to be credible. Dr. Yarus's opinions are accepted over those of Dr. Carlin, as he has performed a significantly higher number of IREs than Dr. Carlin, is board certified in orthopedic surgery and pain management, whereas Dr. Carlin is a family practitioner, has a background in psychology, and has evaluated depression with IREs on numerous occasions prior to the instant matter. In addition, significantly, in making his determination Dr. Yarus took into consideration the adjudicated diagnosis of a left foot drop which Dr. Carlin did not.

(WCJ's FOF Nos. 7–8.)

Based upon these credibility determinations, the WCJ found as fact that as of October 20, 2011, Claimant's whole body impairment was 56%. The WCJ then concluded that, as a matter of law, Claimant's benefits could not be modified from total to partial under section 306(a.2) of the Workers' Compensation Act (Act)[1] because Employer failed to establish that Claimant's whole body impairment rating was less than 50%. Accordingly, the WCJ denied Employer's modification petition.

Employer appealed to the Board, which affirmed the WCJ's decision. The Board explained:

Both doctors performed an IRE using the 6th Edition of the Guides. The difference in the final result was due to the manner in which each doctor interpreted the instructions in the Guides. The [WCJ] based his [d]ecision on Dr. Yarus's more thorough evaluation, specifically including all adjudicated diagnoses, including the diagnosis of a left foot drop. Dr. Yarus made a fully detailed explanation as to how he came to the result that he did, and his explanation is supported by the Guides. As such, we cannot say that the [WCJ] erred.

(Board's decision at 6.)

On appeal to this Court,[2] Employer argues that the WCJ's finding that Dr. Carlin did not address Claimant's adjudicated diagnosis of a left foot drop is not supported by substantial evidence. Employer notes that Dr. Carlin specifically considered Claimant's foot drop when rendering his IRE but determined that it should not be included as a separate impairment under the AMA Guides. Employer also contends that the WCJ failed to issue a reasoned decision as required by section 422(a) of the Act[3] because the WCJ failed

1. Act of June 2, 1915, P.L. 736, added by the Act of June 24, 1996, P.L. 350, *as amended*, 77 P.S. § 511.2.

2. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. Section

704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

3. Section 422(a) provides:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which

to explain why he credited Dr. Yarus' opinion that it was appropriate under the AMA Guides to place an impairment rating on Claimant's foot drop.

■ Initially, we begin by noting that it is a fundamental tenet of workers' compensation law that the WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight. *Williams v. Workers' Compensation Appeal Board (USX Corp.–Fairless Works),* 862 A.2d 137, 143 (Pa.Cmwlth.2004). For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal.[4] *Id.* at 144. As the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.* at 143. A court may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.),* 962 A.2d 14, 19 (Pa.Cmwlth.2008).

Section 306(a.2)(1) of the Act provides employers with the right to require a claimant who has received total disability benefits for a period of 104 weeks to submit to an IRE. If an employer makes such a demand within 60 days after the 104–week period has elapsed, and the IRE

---

clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

With respect to section 422(a), this Court has explained:

To constitute a reasoned decision within the meaning of Section 422(a), a WCJ's decision must permit adequate appellate review. Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. Some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review. There are countless objective factors which may support a WCJ's credibility determina-

tions. These factors must be identified and articulated.

However, Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal.

*Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.),* 893 A.2d 191, 194–95 (Pa.Cmwlth.2006) (citations, internal quotations, and brackets omitted).

4. "Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings." *Rosenberg v. Workers' Compensation Appeal Board (Pike County),* 942 A.2d 245, 249 n. 4 (Pa. Cmwlth.2008). In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party. *Sell v. Workers' Compensation Appeal Board (LNP Engineering),* 565 Pa. 114, 771 A.2d 1246, 1251 (2001); *Waldameer Park, Inc. v. Workers' Comp. Appeal Board (Morrison),* 819 A.2d 164, 168 (Pa.Cmwlth.2003).

indicates that the impairment is less than 50%, a WCJ may grant a modification based solely on the results of the IRE as a matter of course. 77 P.S. § 511.2; *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 607 Pa. 254, 5 A.3d 230, 245 (2010).

However, if, as in this case, an employer requests a claimant to submit to an IRE after the 60–day window, an employer may still seek modification of benefits from total to partial based on the IRE, but the normal administrative process for obtaining a modification of benefits applies. 77 P.S. § 511.2; *Diehl*, 5 A.3d at 245. In this situation, "the IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition to establish that the claimant's disability status should be changed from total to partial." *Diehl*, 5 A.3d at 245. As our Supreme Court explained in *Diehl*,

> [T]he IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer. It is entitled to no more or less weight than the results of any other examination. The physician who performed the IRE is subject to cross-examination, and the WCJ must make appropriate credibility findings related to the IRE and the performing physician. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

*Diehl*, 5 A.3d at 245.

Pursuant to this standard, "the claimant's expert may ... successfully challenge the reliability of the IRE by pinpointing errors of fact or errors in the IRE physician's application of the AMA Guides." *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120, 128 n. 10

(Pa.Cmwlth.2011). A WCJ must identify specific evidence of record (*e.g.*, testimonial or documentary evidence or evidence elicited through cross-examination) to support a finding that an IRE is not reliable or credible on the basis that the physician did not properly interpret or apply the AMA Guides. *Department of Public Welfare v. Workers' Compensation Appeal Board (Slessler)*, 103 A.3d 397, 407–08 (Pa. Cmwlth.2014).

In this appeal, Employer mischaracterizes the WCJ's findings. The WCJ did not find that Dr. Carlin failed to appreciate or acknowledge the existence of Claimant's adjudicated injury of a left foot drop. *See* WCJ's FOF No. 4 ("Dr. Carlin stated that Claimant had a diagnosis of ... a left foot drop ... Upon examination ... [h]e had a foot drop on the left."). Instead, the WCJ noted that Dr. Carlin was aware of Claimant's left foot drop, but found that Dr. Carlin's opinion was not persuasive, in part, because he did not make an independent impairment rating for the foot drop. (WCJ's FOF Nos. 4, 7–8.)

We note that Dr. Yarus explained that Claimant's whole body impairment was 56%, stating that, under the 6th Edition of the AMA Guides, Claimant's left foot drop should be treated as a separate injury deserving of its own impairment rating because it constitutes a motor deficit in the lower extremity that is not otherwise covered by the section of the AMA Guides addressing impairment to the lumbar spine. The WCJ cited this competent testimony in his findings of fact. (WCJ's FOF Nos. 7–8.) *See Westmoreland Regional Hospital*, 29 A.3d at 128 n. 10 ("A rebuttal IRE, proffering an impairment rating above 50 percent, may be evidence most persuasive to counter the IRE done at the employer's request. However, the claimant's expert may also successfully

challenge the reliability of the IRE by pinpointing errors of fact or errors in the IRE physician's application of the AMA Guides."), *and compare with Slessler,* 103 A.3d at 407–08 ("The WCJ should base those new findings not on his opinion of how physicians should properly apply the AMA Guides, but on *competent* evidence in the record that supports or challenges the reliability of [the physician's] IRE and testimony concerning the AMA Guides.") (emphasis added). Dr. Yarus' competent testimony distinguishes this case from *Slessler,* where we held that the WCJ erred in relying on testimony that was not competent and in failing to cite competent evidence to support his findings.

Finally, in accepting the testimony of Dr. Yarus as more persuasive than the conflicting opinion of Dr. Carlin, the WCJ cited Dr. Yarus' greater experience and superior qualifications. (WCJ's FOF No. 8.) Thus, the WCJ articulated reasons for making this credibility determination, thereby permitting effective appellate review and satisfying section 422(a) of the Act. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 574 Pa. 61, 828 A.2d 1043, 1053 (2003) (stating when a WCJ bases a credibility determination on an expert's superior qualifications, the WCJ has articulated a valid and objective reason under section 422(a) of the Act).[5]

In sum, because the WCJ expressly found that Dr. Yarus acknowledged Claimant's foot drop injury, and because the WCJ adequately explained his reasons for finding Dr. Yarus' opinions more persuasive, we reject Employer's arguments and conclude that the WCJ did not err in denying Employer's modification petition.

Accordingly, we affirm.

### ORDER

AND NOW, this 23rd day of February, 2015, the April 2, 2014 order of the Workers' Compensation Appeal Board (Board) is affirmed.

---

5. In a perplexing manner, Employer also contends, in a passing reference, that Dr. Yarus' 11% impairment rating for Claimant's right knee is not substantial evidence because Dr. Yarus performed an IRE on Claimant later than Dr. Carlin and found that Claimant presented a more severe symptomatic presentation. For support, Employer cites *Westmoreland Regional Hospital* for the proposition that a claimant's condition at the time of the IRE governs, not before or after.

However, Employer did not raise this argument before the Board and the Board did not address it; therefore, it is waived. *CVA, Inc. v. Workers' Compensation Appeal Board (Ri-*

*ley),* 29 A.3d 1224, 1230 (Pa.Cmwlth.2011) ("Employer did not raise this issue before the Board; therefore, it is waived."). Further, the fact that Dr. Yarus viewed Claimant's condition differently than Dr. Carlin is of no moment when both Dr. Yarus and Dr. Carlin agreed on the same diagnosis of Claimant's right knee, (R.R. at 122a), and *Diehl* explained that a claimant "may introduce his own evidence regarding his degree of impairment to rebut the IRE findings," *Diehl,* 5 A.3d at 245, thereby anticipating that a claimant will have a medical expert examine him after the IRE is performed.