# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cathy Nigro, : 
    Petitioner : 
           :   No. 1802 C.D. 2017
    v. : 
           :   Submitted: March 16, 2018
Workers' Compensation Appeal : 
Board (Aetna Inc.), : 
    Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
       HONORABLE PATRICIA A. McCULLOUGH, Judge
       HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH            FILED: May 22, 2018

    Cathy Nigro (Claimant) petitions for review of the November 8, 2017 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying Claimant's claim petition.

## Facts and Procedural History

    Claimant was employed by Aetna, Inc. (Employer) in various capacities since 1990, and last served as a senior claims benefits specialist for Employer. On December 2, 2013, Claimant filed a claim petition alleging that she sustained an injury to her left hand, arm, and fingers on April 30, 2012, as a result of cumulative trauma from typing in the course and scope of her employment with Employer. Claimant sought total disability benefits as of May 17, 2012, the date she stopped working for

Employer. Employer filed an answer denying the material allegations of Claimant's petition. Employer later filed an amended answer raising an affirmative defense that Claimant's petition was barred by the 3-year statute of limitations set forth in section 315 of the Pennsylvania Workers' Compensation Act (Act).[1] The case was assigned to the WCJ and proceeded with hearings. (Findings of Fact Nos. 2-3.)

At these hearings, Claimant testified that she worked for Employer since 1990, and her last position as a senior claims benefits specialist involved reprocessing insurance claims by typing targets. Claimant stated that she typically typed continuously during an 8-hour shift, except during breaks. Claimant noted that while typing on April 30, 2012, her left hand turned deep blue and she started having pain and muscle spasms in that hand. Claimant indicated that she worked from home and was in contact with her supervisor, Michael Abrams, once or twice per week. Claimant said that she reported to Abrams that she was having difficulty working because of the problems with her left hand and eventually stopped working as of May 16, 2012. At that time, Claimant also reported her symptoms as a work-related injury to the appropriate unit of Employer. (Finding of Fact No. 5(a)-(b).)

Claimant sought treatment from her primary care physician, a vascular surgeon, and a neurologist before coming under the care of Anna Mathew, M.D., a physiatrist. As of the date of her testimony, January 15, 2014, Claimant stated that she

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §602. Section 315 of the Act provides, in pertinent part,

> In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

77 P.S. §602.

continued to have discoloration and pain in her left hand. Claimant acknowledged that she had previous problems with that hand dating back to 2003, at which time she underwent carpal tunnel and cubital tunnel surgery, but noted that she returned to full duty work in 2006. Claimant also acknowledged that she underwent left tennis elbow surgery in 2011, but stated that she had returned to her regular position shortly thereafter. (Finding of Fact No. 5(c)-(d).)

On cross-examination, Claimant admitted that she received short-term and long-term disability benefits through Employer after she stopped working in May 2012. Claimant also stated that she did not receive any workers' compensation benefits related to her prior carpal tunnel, cubital tunnel, or left tennis elbow surgeries. As of the January 2014 hearing, Claimant acknowledged that she had only seen Dr. Mathew on one occasion in November 2013 and had not received any medical treatment for her claimed left hand work injury. Claimant also acknowledged that her left hand was not discolored at the hearing but explained that the discoloration varies from time to time. Claimant denied having any complaints or symptoms in her left hand since the last surgery, up until April 30, 2012, when the symptoms started all at once. Claimant noted that Dr. Mathew had recommended therapy but had not yet scheduled the same due to an unrelated medical condition. Finally, Claimant indicated her belief that she was entirely unable to work and denied that she could perform even a sedentary position without the use of her left hand. (Finding of Fact No. 5(e)-(j).)

Claimant presented the deposition testimony of Dr. Mathew, who is board-certified in internal medicine and occupational and environmental medicine, in support of her claim petition. Dr. Mathew began by stating that she does not perform surgery and mainly focuses her practice on rehabilitation and non-surgical treatment. Dr. Mathew testified that she first evaluated Claimant on November 18, 2013, for complaints of pain, spasm, and discoloration in Claimant's left hand. She noted that

3

an EMG performed in June of 2013 indicated residual effects from prior carpal tunnel surgery and mild, bilateral carpal tunnel syndrome. She also noted that Claimant had been referred to a pain clinic but was not willing to take the prescribed narcotic medications. She was aware of Claimant's prior surgeries and ultimately diagnosed Claimant with chronic left arm pain, secondary to cumulative trauma disease with a history of cubital tunnel syndrome, carpal tunnel syndrome, and lateral epicondylitis. She prescribed medication and recommended therapy as a means to alleviate Claimant's problems. (Finding of Fact No. 6(a).)

Dr. Mathew's deposition occurred on May 15, 2014, and she testified that she last saw Claimant on May 6, 2014, at which time Claimant had just begun hand therapy. She noted that Claimant continued to complain of the same left hand symptoms reported at the initial evaluation, as well as new pain in the right arm. She went on to explain that individuals who perform a lot of typing can have cumulative trauma disease, which she described as a soft tissue injury that is commonly the result of micro-trauma secondary to repetitive or stressful movement. She believed that Claimant's prior and current problems could all fall under the heading of cumulative trauma disease. She stated that typing and repetitive use of the fingers, along with the force exerted and abnormal posture, could be factors leading to cumulative trauma disease, but admitted that it was difficult to determine the exact cause without visiting Claimant's job site.[2] Finally, Dr. Mathew opined that Claimant is totally disabled as a result of her work-related condition. (Finding of Fact No. 6(b)-(e).)

On cross-examination, Dr. Mathew agreed that she had not evaluated Claimant until 18 months after Claimant stopped working. However, she maintained her position that Claimant's ongoing subjective complaints were related to her typing

---

[2] On cross-examination, Dr. Mathew admitted that she had not visited Claimant's work site. (Reproduced Record (R.R.) at 90a.)

4

activities for Employer even though Claimant had not worked for two years. She disagreed with the opinion of Employer's medical expert that Claimant's work activities were not the cause of her subjective complaints. She described cumulative trauma disease as a real syndrome and indicated her belief that she is more familiar with this condition than Employer's medical expert. She did acknowledge that an arterial Doppler study and a 3-phase bone scan of Claimant's left arm taken in 2012 were normal. She also acknowledged that she never noticed Claimant's left hand being blue during any examination. While she was aware that Claimant suffered from depression, anxiety, and post-traumatic stress disorder, Dr. Mathew could not opine whether these mental issues prevented Claimant from working. Finally, she acknowledged that notes from Claimant's April 27, 2012 visit to her primary care physician reference Claimant's left hand turning blue, but do not mention pain, and that notes from a September 27, 2012 visit reflect a normal examination with the exception of some left shoulder pain. (Finding of Fact No. 6(f)-(k).)

Employer presented the deposition testimony of Robert Goitz, M.D., a board-certified orthopedic surgeon with an added qualification for hand surgery, in opposition to Claimant's petition. Dr. Goitz stated that he focuses his practice on treating patients for all conditions of the hand, wrist, and arm. He examined Claimant on February 24, 2014, at which time Claimant complained of discoloration of her left hand and pain radiating from her left hand to her shoulder, as well as weakness, spasms, and cramping in her left hand. Claimant described her position with Employer as involving continuous typing activities and informed Dr. Goitz that the symptoms had not changed since she stopped working. Dr. Goitz reviewed Claimant's medical records, which detailed her previous carpal tunnel, cubital tunnel, and left tennis elbow surgeries. (Finding of Fact No. 7(a)-(b).)

5

Dr. Goitz also reviewed a bone scan conducted on August 9, 2012, which was normal, and various electrodiagnostic studies, the last of which, dated December 24, 2013, revealed mild, bilateral carpal tunnel syndrome. However, he testified that such a result would be expected given Claimant's prior surgeries. He did not relate Claimant's condition to her work activities for Employer due to the passage of almost two years between his examination and when Claimant last worked and because a causal relation between typing and carpal tunnel syndrome has never been established medically. Upon examination, Dr. Goitz observed no visual abnormality of Claimant's left hand and full range of motion and no swelling of any area of Claimant's left upper extremity. Upon further examination, Dr. Goitz stated that Claimant had normal sensation of each fingertip of both hands. Dr. Goitz indicated that the only clinical abnormality related to a pinch strength test, which was indicative of an ulnar nerve problem and inconsistent with the results of the electrodiagnostic studies. He questioned whether Claimant was giving effort during this test. He also questioned whether Claimant was giving effort during a grip strength test, noting a high discrepancy in the results on each side. In fact, Dr. Goitz performed this test three times on each hand and the results varied to such an extent that he found that Claimant was not giving a sufficient and consistent effort on each side. Essentially, he described the examination of Claimant's left hand as normal. (Finding of Fact No. 7(c)-(d).)

Dr. Goitz testified that there was no medical explanation for Claimant's subjective complaints. He reiterated his belief that Claimant's work activities were not the cause of her complaints, especially because Claimant stopped working two years before his examination, the symptoms did not change, and there were no studies to support a relationship between repetitive typing and carpal tunnel or cubital tunnel syndrome. He disagreed with Dr. Mathew's opinion on causation, stating that only one of Claimant's arms was subjectively symptomatic. He opined that Claimant had fully

6

recovered from any left hand symptoms she may have sustained and could return to her full-time position without any restrictions. He also reiterated his belief that Claimant was magnifying her symptoms during his examination. (Finding of Fact No. 7(e)-(g).)

On cross-examination, Dr. Goitz stated that carpal tunnel and cubital tunnel syndrome are not caused by low impact, low stress activities, but instead are associated with high stress, highly repetitive activities such as moving heavy motors on an assembly line. He acknowledged that some patients have complained that office work, such as typing, exacerbated carpal and cubital tunnel conditions. Dr. Goitz opined that, because Claimant continued to have the same complaints, unresolved two years after she stopped working/typing, he would not diagnose her with cumulative trauma disease. (Finding of Fact No. 7(h)-(i).)

By decision and order circulated July 22, 2016, the WCJ denied Claimant's claim petition, concluding that she failed to meet her burden of establishing that she sustained a work injury on April 30, 2012.[3] In reaching this conclusion, the WCJ rejected the testimony of Claimant as not persuasive, citing the lack of any notation of discoloration of her left hand by Dr. Mathew or Dr. Goitz; the lack of any complaints of left hand pain in the treatment notes of Claimant's primary care physician for visits on April 27 and September 27, 2012; and the symptom magnification as noted by Dr. Goitz. Regarding the medical testimony, the WCJ accepted the testimony of Dr. Goitz as more persuasive than that of Dr. Mathew, explaining that Dr. Goitz was better qualified as an orthopedic surgeon with an added qualification for hand surgery, and his opinion was more logical and thoughtful. The WCJ also noted that Dr. Mathew provided no testimony regarding any physical examination of Claimant's left hand. In

---

[3] Alternatively, the WCJ concluded that Claimant failed to provide timely notice within 120 days of her work injury as required by section 311 of the Act, 77 P.S. §631, as Claimant knew or should have known of the existence of her claimed work-related left hand condition in 2003 and its possible relationship to her employment.

7

addition, the WCJ described Dr. Mathew's opinion on causation as equivocal, as she testified that Claimant's work activities "could be factors leading to Claimant having cumulative trauma disease, stating that it was difficult to determine the exact cause of the disease," and that "Claimant's work activities could result" in her condition. (Finding of Fact No. 13.) Claimant appealed to the Board, but the Board affirmed.

## Discussion

On appeal to this Court,[4] Claimant argues that the Board erred in affirming the WCJ's decision denying her claim petition. More specifically, Claimant argues that she presented sufficient evidence to meet her burden of establishing that she sustained an injury in the nature of cumulative trauma disease as result of her work for Employer. We disagree.

The law is well settled that the WCJ, as the fact-finder, has complete authority over questions of witness credibility and evidentiary weight. *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). For purposes of this Court's review, it is irrelevant whether evidence exists to support contrary findings; rather, if substantial, competent evidence exists to support the WCJ's necessary findings, those findings will not be disturbed on appeal. *Id.* "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). Accordingly, the WCJ has exclusive

---

[4] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

province over credibility and weight determinations and may accept or reject the testimony of any witness, in whole or in part. *Verizon Pennsylvania, Inc.*, 116 A.3d at 1162. We may overturn a credibility determination "only if it is arbitrary or capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

In the present case, the WCJ rejected the testimony of Claimant and her medical expert, Dr. Mathew, as neither credible nor persuasive. Additionally, the WCJ accepted the testimony of Employer's medical expert, Dr. Goitz, as credible and more persuasive than that of Dr. Mathew. The credible testimony of Dr. Goitz supports the WCJ's findings and conclusions in this case. The WCJ provided ample explanation for the reasoning underlying her credibility determinations. Claimant's brief on appeal consists almost entirely of a challenge to the WCJ's credibility determinations and the weight the WCJ assigned to the evidence presented by the parties. However, as noted above, such determinations are within the exclusive province of the WCJ and will not be disturbed on appeal. *Verizon Pennsylvania, Inc.*

Moreover, Claimant argues that Dr. Mathew was more experienced with cases of occupational disease and, in particular, cumulative trauma disease, than Dr. Goitz, who worked as a surgeon. However, Claimant raised this issue before the WCJ and it goes to the weight of the evidence to be assigned to the respective medical testimony herein, which the WCJ ultimately decided in Employer's favor. Claimant has not presented any basis upon which this Court could conclude that the testimony of Dr. Goitz was "arbitrary or capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne*, 962 A.2d at 19. To the contrary, in his testimony, Dr. Goitz provided a thorough review of his examination of Claimant, which included a normal bone scan in 2012, expected

9

results from electrodiagnostic studies conducted in 2013, what he perceived to be symptom magnification by Claimant, and his opinion as to her condition, which he believed was unrelated to her activities at work. Thus, the credibility determinations of the WCJ must stand.

Finally, Claimant appears to suggest in her brief that the causal connection between Claimant's injury and her disability in this matter was obvious, thereby obviating the need for presentation of medical evidence establishing the same. Again, we disagree.

Claimant is correct that in cases where the connection between a work injury and subsequent disability is obvious, a claimant need not present medical evidence establishing this connection. *Northwest Medical Center v. Workers' Compensation Appeal Board (Cornmesser)*, 880 A.2d 753, 755 (Pa. Cmwlth. 2005). In *Northwest Medical Center*, we explained that "[a] causal connection is obvious where an individual is doing an act that requires force or strain and pain is immediately experienced at the point of force or strain." *Id.* (citation omitted). In that case, the claimant, a registered nurse, felt a pop in his back and immediately experienced pain and stiffness while attempting to move a large patient, which he immediately mentioned to a coworker. Within a week, the claimant was hospitalized and operated on for a herniated disk.

The present case is distinguishable. In this case, Claimant underwent multiple surgeries in the past related to carpal tunnel syndrome and tennis elbow, and Claimant admitted that she did not receive workers' compensation benefits for time missed as a result of these surgeries. In addition, while Claimant testified that she first experienced problems with her left hand on April 30, 2012, she continued working for an additional two weeks, until May 16, 2012. Claimant did not cease working as a result of an easily identifiable event or immediate onset of pain. To the contrary,

10

Claimant was alleging cumulative trauma disease, which by its very terms consists of repeated trauma to an identified area. Further, the fact that the causal relationship was not obvious is emphasized by the disagreement between the medical experts in this case, Dr. Mathew and Dr. Goitz, regarding the very existence of a causal connection between repetitive typing and carpal tunnel or cubital tunnel syndrome. Thus, we cannot agree with Claimant to the extent that she argues that the causal connection between her injury and disability in this matter was obvious.

**Conclusion**

The causal connection between Claimant's purported work injury and disability in this matter was not obvious, such that medical evidence was necessary to establish the same. In that regard, the WCJ accepted the testimony of Dr. Goitz as credible and more persuasive than that of Dr. Mathew, and this credible testimony supports the WCJ's findings and conclusions that Claimant failed to meet her burden of establishing that she sustained a work injury on April 30, 2012. The WCJ's credibility determination is binding on this Court and will not be disturbed on appeal.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cathy Nigro, :
    Petitioner :
           : No. 1802 C.D. 2017
    v. :
           :
Workers' Compensation Appeal :
Board (Aetna Inc.), :
    Respondent :

## ***ORDER***

AND NOW, this 22nd day of May, 2018, the order of the Workers' Compensation Appeal Board, dated November 8, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge