Sharon Bouges,                   :
          Petitioner        :
                       :   No. 565 C.D. 2022
                       :
          v.               :
                       :   Submitted: January 27, 2023
City of Philadelphia (Workers'    :
Compensation Appeal Board),     :
          Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: August 30, 2023

In this workers' compensation (WC) case, Petitioner Sharon Bouges (Claimant) petitions for review of the May 10, 2022 Opinion and Order of the Workers' Compensation Appeal Board (Board), which affirmed the November 29, 2021 Decision and Order of Workers' Compensation Judge (WCJ) Todd Seelig (WCJ Seelig). WCJ Seelig granted the Petition to Modify Compensation Benefits (Modification Petition) filed by Respondent City of Philadelphia (Employer) and modified Claimant's WC benefit status from temporary total disability (TTD) to temporary partial disability (TPD) based on an Impairment Rating Evaluation (IRE) performed on January 7, 2021. Upon review, we affirm the Board.

## I.    FACTS AND PROCEDURAL HISTORY

On May 18, 2010, Claimant was injured in the course and scope of her employment with Employer when she fell on a wet floor. (WCJ Seelig Finding of Fact (FOF) 2; Reproduced Record (R.R.) at 13a.) Claimant's injuries were acknowledged

by Employer in a Notice of Compensation Payable (NCP) issued on June 29, 2010, which generally described the injuries as strain/sprain/contusions of the right ankle and both knees. (FOF 3; R.R. at 13a.) The injuries later were expanded and more clearly defined in the April 17, 2015 Decision of WCJ Andrea McCormick (WCJ McCormick) as persistent right ankle swelling and sprain/strain with synovitis and traumatic lymphedema. *Id.*[1] Claimant received weekly TTD WC benefits in the amount of $845.00 based on her average weekly wage of $1,560.06. (FOF 3; R.R. at 13a.)

On January 7, 2021, pursuant to Section 306(a.3) of the Workers' Compensation Act (WC Act),[2] also known as Act 111, Claimant underwent an IRE performed by Dr. Daisy Rodriguez (Dr. Rodriguez) using the Sixth Edition, second printing of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides). (FOF 4(b); R.R. at 14a.) Based on her evaluation, Dr. Rodriguez concluded that Claimant had a whole-person impairment rating of 7%.[3] (FOF 4(f); R.R. at 15a.) Employer accordingly filed its Modification Petition on February 11, 2021, seeking to reduce Claimant's WC benefit status from TTD to TPD.

Before WCJ Seelig, Employer presented Dr. Rodriguez's deposition testimony. Dr. Rodriguez testified that, on the date of the IRE, Claimant's chief complaints included right ankle and foot pain, bilateral knee pain, bilateral lymphedema, back and neck pain with left hand numbness, and a healed fracture of the

---

[1] Claimant sustained a second work-related injury on July 5, 2011, when she was involved in a motor vehicle accident while traveling to physical therapy for the May 18, 2010 injury. (WCJ McCormick Finding of Fact 2; R.R. at 80a.)

[2] Act of June 2, 1915, P.L. 736, *as amended.* Section 306(a.3) was added by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. § 511.3.

[3] Dr. Rodriguez initially concluded that Claimant's whole-person impairment rating was 6%, but she later amended her calculation to 7%. (FOF 4(f) n.2; R.R. at 15a.)

right fifth distal interphalangeal joint. (FOF 4(b); R.R. at 14a.) Claimant stated that her right foot and ankle pain was worse with walking, standing, and all static positions, and she had throbbing at night. (FOF 4(c); R.R. at 14a.) After obtaining Claimant's medical history, reviewing her medical records, and performing a physical examination, Dr Rodriguez diagnosed Claimant with a sprain of the right ankle with post-surgical repair, contusions of the bilateral knees, and complaints of post-traumatic chronic pain with demonstrated gait abnormality. Dr. Rodriguez determined that Claimant was at maximum medical improvement (MMI), which is defined in the AMA Guides as a status where the patient is as good as they are going to be from the medical and surgical treatment available to them. (FOF 4(d)-(e); R.R. at 14a-15a.)

Dr. Rodriguez went on to explain why the expanded description of Claimant's injury, which included persistent right ankle swelling with synovitis and traumatic lymphedema, did not alter her calculation of Claimant's impairment rating:

> [ ] After Dr. Rodriguez determined [that] Claimant was at [maximum medical improvement (MMI)], she performed an [IRE] using the [AMA Guides]. Using the [AMA Guides] Dr. Rodriguez determined Claimant's whole[-]person impairment was 7[%]. Dr. Rodriguez'[ ] calculation of whole[-]person impairment is not altered by Claimant's knee contusions or the persistent right ankle swelling with synovitis and traumatic lymphedema. In terms of knee contusions, Claimant had no signs of contusions, there were no motion deficits, there were no objective abnormal findings on physical examination of the knees[,] and there were no diagnostic studies to show any sign of contusion[,] which puts [Claimant] [at] . . . a zero percent lower extremity impairment. As for the lymphedema, Dr. Rodriguez did not find any pitting edema or other findings of physical examination or findings of radiographic studies that would be consistent with lymphedema. Dr. Rodriguez looked up lymphedema in the [AMA Guides] and also determined that [ ] Claimant presented with none of the signs of lymphedema including: a breakdown of the skin, lesions, oozing of the skin,

3

> puckering, or pitting. For that reason, Dr. Rodriguez assigned the lymphedema [a] zero. For those reasons, the knee contusions and lymphedema would not change or affect Dr. Rodriguez's rating of 7[%] whole[-]person impairment.

(FOF 4(f); R.R. at 15a) (citation and footnote omitted). Dr. Rodriguez further explained that, although her written IRE report had errors in formatting, templating, and dictation, the calculations given in her testimony nevertheless were correct. (FOF 4(g),(i); R.R. at 15a.)

Claimant did not present any evidence to refute Dr. Rodriguez's opinions. (FOF 5; R.R. 16a.) She instead argued that Act 111 was unconstitutional and that it was an unlawful delegation of legislative authority. WCJ Seelig accepted Dr. Rodriguez's testimony as credible and rejected Claimant's arguments challenging the validity of Act 111, in part pursuant to this Court's decision in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2020). (FOF 5-7; R.R. at 16a.) WCJ Seelig granted Employer's Modification Petition and reduced Claimant's WC benefit status from total to partial as of January 7, 2021, the date of the IRE. (WCJ Seelig Conclusion of Law 2; R.R. at 17a.)

Claimant appealed to the Board, arguing that (1) Act 111 could not constitutionally be applied to her injury, which occurred before its effective date, and (2) that Dr. Rodriquez's IRE and related opinions did not constitute substantial evidence supporting the change in Claimant's WC benefit status. (R.R. at 21a-23a.) The Board affirmed, and Claimant now petitions for review in this Court.

## II.   ISSUES PRESENTED

Although Claimant identifies four issues in her brief, they fairly can be combined into two: (1) whether Act 111 may constitutionally be applied to Claimant's injury, which occurred before Act 111's effective date; and (2) whether the WCJ's findings are supported by substantial evidence. Employer raises an additional issue,

4

namely, whether Claimant's appeal is frivolous and warrants an award of attorneys' fees pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 2744.

## III.   DISCUSSION[4]

### A.   Act 111

In her first series of issues, Claimant argues, as she did before WCJ Seelig and Board, that retroactive application of Act 111 violates due process and the Remedies Clause of the Pennsylvania Constitution.[5]

On September 18, 2015, almost five and one-half years after Claimant's May 18, 2010 injury, this Court issued its decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) *(Protz I)*, *affirmed in part and reversed in part*, 161 A.3d 827 (Pa. 2017) *(Protz II)*, declaring former   Section 306(a.2) of the WC Act[6] void in its entirety.   In *Protz II*, the

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

[5] The Remedies Clause provides, in pertinent part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. . . ."  Pa. Const. art. I, § 11.

[6] Section 306(a.2), *formerly* 77 P.S. § 511.2, was repealed by Act 111 and replaced by Section 306(a.3).  Section 306(a.2) provided, in pertinent part, as follows:

> When an employe has received total disability compensation pursuant to clause (a) for a period of [104] weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any . . . .  The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the [AMA Guides] . . . (2) If such determination results in an impairment rating that meets a threshold impairment rating that

**(Footnote continued on next page…)**

5

Pennsylvania Supreme Court held that the General Assembly, in authorizing the application of future versions of the AMA Guides without review, had unconstitutionally delegated its lawmaking authority in violation of the non-delegation doctrine.[7] 161 A.3d at 840-41.  The Court invalidated Section 306(a.2) in its entirety.

On October 24, 2018, in response to *Protz II*, the General Assembly passed Act 111, which replaced former Section 306(a.2) of the Act with Section 306(a.3).  Section 306(a.3) reads in relevant part:

> (1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any.  The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the [Sixth Edition, second printing of the AMA Guides].
>
> (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] . . . , the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . .  If such determination results in an impairment rating less than [35%] impairment . . . , the employe shall then receive partial disability benefits under clause (b) . . . .

77 P.S. § 511.3.  Section 3 of Act 111 further provides, in pertinent part, as follows:

---

is equal to or greater than [50%] . . . the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits. . . . If such determination results in an impairment rating less than [50%] impairment . . . the employe shall then receive partial disability benefits under class (b) . . . .

*Former* 77 P.S. § 511.2.

[7] Pa. Const. art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.").

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [WC A]ct, an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph. This section shall not be construed to alter the requirements of section 306(a.3) of the [WC A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [WC A]ct, an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.

77 P.S. § 511.3, Historical and Statutory Notes.

In *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Co.)*, 252 A.3d 1169 (Pa. Cmwlth. 2021),[8] the claimant sustained a work-related injury on August 13, 2014. The employer acknowledged the injury via NCP, and the claimant received TTD benefits. 252 A.3d at 1171-72. On December 21, 2018, the employer filed a modification petition pursuant to newly-enacted Section 306(a.3) seeking to change the claimant's benefits from TTD to partial disability based on an IRE performed on December 19, 2018. *Id.* at 1172. The claimant lodged constitutional challenges to Section 306(a.3) before both the WCJ and the Board, both of which declined to address the challenges. *Id.*[9] On appeal to this Court, the claimant argued that (1) Section 306(a.3) is unconstitutional "on its face," and (2) Section 306(a.3) cannot be applied retroactively to claims that originated (i.e., have an injury

---

[8] Although *Pierson* initially was filed as an unpublished memorandum, on application of the Pennsylvania Bar Association Workers' Compensation Law Section, we ordered publication on April 26, 2021. *See* Pa. R.A.P. 3740.

[9] The claimant in *Pierson* also challenged the credibility of the physician performing the subject IRE, an issue not before us in this appeal.

7

date) prior to October 24, 2018, the effective date of the new IRE mechanism. The claimant further argued that Act 111 involved a change in substantive law, that *Protz II* invalidated any IRE mechanism that could apply to his claim, and that the application of Act 111 to his claim retroactively violates vested rights specifically secured by due process and the Remedies Clause of the Pennsylvania Constitution. *Id.* at 1174-76.

We rejected the claimant's arguments, relying chiefly on our prior decisions in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019), and *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020). Because our analysis in *Pierson* is controlling here, we quote it at length:

> In [*Pennsylvania AFL-CIO*], we determined [that] Act 111 was not an unconstitutional delegation of legislative authority, as the prior IRE provision of the [WC] Act was determined to be. . . . Our opinion in *Pennsylvania AFL-CIO* was affirmed by a brief *per curiam* order of our Supreme Court. . . . Although we acknowledge that the determination in *Pennsylvania AFL-CIO* was relative to whether Act 111 was an unconstitutional delegation of legislative authority, it was nevertheless a test of [the] [ ] assertion that Act 111 is unconstitutional "on its face," and the consensus was that it is not. . . .
>
> In addition, and in regard to the issue of the retroactive application of the 104-week and credit provisions of Act 111, we first address [the] [ ] contention that *Protz II* rendered former Section 306(a.2) of the Act void *ab initio* . . . .
>
> In [*Warren v. Folk*, 886 A.2d 305 (Pa. Super. 2005)], the Pennsylvania Superior Court explained that it, and our Supreme Court, had considered the issue of retroactivity in terms of whether the statute in question affects vested rights and determined that
>
> > [w]here no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date

8

even though the condition results from events prior to that date. . . . A "vested right" is one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."

While [the] [c]laimant, here, argues that he has a right to benefits as calculated at the time of injury, there are reasonable expectations under the [WC] Act that benefits may change. We acknowledge that a claimant retains a certain right to benefits until such time as he is found to be ineligible for them. However, claimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from [TTD] to [TPD] by providing the requisite medical evidence that the claimant has a whole[-] body impairment of less than 35%, after receiving 104 weeks of TTD benefits.

As this Court opined in *Rose Corporation*, the General Assembly made it clear in [Section 3 of] Act 111 that weeks of TTD and [TPD] by an employer/insurer prior to the enactment of Act 111 count as credit against an employer's new obligations under Act 111. In *Rose Corporation*, we said, in reference to Act 111:

> The plain language of Section 3 establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) provides that an employer/insurer "shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph" for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation. 77 P.S. § 511.3(1); *former* 77 P.S. § 511.2(1). *See* Section 3(1) of Act 111. Therefore, pursuant to Section 3(1), an employer/insurer will receive credit towards this

9

104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "for the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the WC Act." Section 3(2) of Act 111. In short, any weeks of partial disability previously paid will count towards the 500-week cap on such benefits.

[*Rose Corporation*], 238 A.3d at 561-62. [W]e also added: "Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid." [*Id.*] at 562.

. . . .

[The] [c]laimant, herein [ ] argues that the General Assembly cannot take away his "vested rights" and that it did not explicitly express an intent to apply the provisions of Act 111 in any sort of a retroactive fashion. As we noted above, [the] [c]laimant's "vested rights" have not been abrogated by Act 111. Further, we believe it is clear that the General Assembly intended for the 104-week and credit weeks provisions of Act 111 to be given retroactive effect, where, as we noted in *Rose Corporation*, it stated in plain language it was doing so. Thus, [the c]laimant does not prevail in his arguments relative to the constitutionality of Act 111, and we see no reason to disturb the Board's Order affirming the WCJ.

*Id.* at 1178-80. *See also DiPaolo v. UPMC Magee Women's Hospital (Workers' Compensation Appeal Board)*, 278 A.3d 430, 432-38 (Pa. Cmwlth. 2022), *appeal denied*, 290 A.3d 237 (Pa. 2023).

Claimant argued throughout the proceedings before WCJ Seelig and Board, and argues again in this Court, that Act 111 was not intended to apply

10

retroactively, constitutes an invalid delegation of legislative authority, and, to the extent that it does apply retroactively, is unconstitutional. In *Pierson*, which we again reaffirm, we concluded that Act 111 clearly was intended to apply retroactively, is not an invalid delegation of legislative authority, and does not violate due process or the Remedies Clause of the Pennsylvania Constitution. We therefore must conclude that Claimant's arguments in this regard are without merit.

## B. Substantial Evidence

Claimant also argues that WCJ Seelig's findings are not supported by substantial evidence because Dr. Rodriguez's testimony and report do not credibly support a change in benefit status from TTD to TPD. Claimant contends that Dr. Rodriguez's opinions were not based on the expanded description of Claimant's injury identified in WCJ McCormick's findings and that Dr. Rodriguez omitted from her IRE calculation any consideration of Claimant's bilateral knee contusions or traumatic lymphedema. Claimant therefore argues that Dr. Rodriguez's testimony, even though uncontradicted, could not support WCJ Seelig's findings. We disagree.

To prevail on its Modification Petition, Employer had the burden to prove, with substantial evidence, that Claimant had a whole-person impairment rating of less than 35% pursuant to the AMA Guides. *See* 77 P.S. § 511.3(1), (2). "Substantial evidence" is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). In conducting a substantial evidence analysis, we view the evidence in a light most favorable to the party that prevailed before the WCJ. *Id.* Speculation or conjecture alone are insufficient to support a finding, but where one is able to draw reasonable and logical inferences from the evidence presented, conclusions based on those inferences will be sufficient even

11

if other conclusions are possible. *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

Further, the WCJ is the factfinder and has the sole prerogative to assess credibility and resolve conflicts in the evidence. *Hawbaker v. Workers' Compensation Appeal Board (Kriner's Quality Roofing Services)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017). Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Id.* For purposes of appellate review, it is irrelevant whether there is evidence to support findings contrary to those made by the WCJ; if substantial evidence supports the WCJ's necessary findings, they will not be disturbed on appeal. *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).

Claimant argues that Dr. Rodriguez's testimony contradicted her IRE report and that Dr. Rodriguez did not consider the expanded description of Claimant's injury in making her IRE calculations. However, Dr. Rodriguez was asked directly about the expanded description of Claimant's injury, including her complained-of knee contusions and lymphedema, and she testified that those conditions did not change her calculation of Claimant's impairment rating. (FOF 4(f); R.R at 15a; *see also* R.R. at 125a-27a; 146a-49a.) Dr. Rodriguez explained and corrected any inconsistencies in her IRE report and testified clearly that Claimant's impairment rating remained at 7%. *Id.* Thus, we must conclude that Claimant's arguments simply challenge WCJ Seelig's credibility determinations, which we will not disturb, particularly where, as here, Claimant presented no medical evidence to rebut Dr. Rodriguez's conclusions. We thus agree with the Board that WCJ Seelig's findings regarding Claimant's impairment rating are supported by substantial evidence.

## C.    Attorneys' Fees

Employer argues that Claimant's challenges to Act 111 have no basis in law or fact and have been addressed and rejected by this Court on multiple occasions. Employer argues that "the case law is now well[ ]established" and that Claimant is "simply regurgitating arguments that have been previously addressed by this Court." (Employer Br. at 16.)   Employer accordingly requests an award of $1,000.00 in attorneys' fees pursuant to Pa. R.A.P. 2744.[10]

The imposition of counsel fees and costs under Rule 2744 is within this Court's discretion.  *Canal Side Care Manor, LLC v. Pennsylvania Human Relations Commission*, 30 A.3d 568, 579 (Pa. Cmwlth. 2011).  An appeal is frivolous if "no justifiable question has been presented" and the appeal "is readily recognizable as devoid of merit in that there is little prospect of success."  *Id.* (citing *Department of Transportation v. Workmen's Compensation Appeal Board (Tanner)*, 654 A.2d 3 (Pa. Cmwlth. 1994)).  In exercising our discretion regarding whether to award attorney's fees, we are "mindful of the need to avoid unjustly penalizing an appellant for exercising her right to fully exhaust her legal remedies."  *Id.* (citing *Watkins v. Unemployment Compensation Board of Review*, 689 A.2d 1019, 1022 (Pa. Cmwlth. 1997)).

Although we agree with Employer that this Court clearly and repeatedly has rejected challenges to the constitutionality of Act 111 (and we do so once again in this case), we nevertheless cannot conclude that Claimant's entire petition for review is frivolous and bereft of any basis in law or fact.  Had Claimant only challenged Act

---

[10] Rule 2744 pertinently provides that an appellate court may award reasonable attorneys' fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate, or vexatious."  Pa. R.A.P. 2744.

111 in this appeal, Employer's argument would have more force. Claimant, however, also challenged WCJ Seelig's findings regarding Dr. Rodriguez's testimony and its sufficiency to support Employer's Modification Petition. Although we conclude that Dr. Rodriguez's testimony provides substantial evidence justifying the change of Claimant's WC benefit status from TTD to TPD, the testimony did contain certain apparent inconsistencies and mistakes that required correction and further explanation. The WCJ found, and we agree, that Dr. Rodriguez offered sufficient explanations for any such inconsistencies and errors, but we also find that they provided Claimant with at least a plausible argument on appeal. For that reason, we deny Employer's request for attorneys' fees.

## IV.  CONCLUSION

WCJ Seelig did not err in applying Act 111 to Claimant's injury, and his findings of fact are supported by substantial evidence. Claimant's issues on appeal therefore are without merit. We accordingly affirm the Board. Finally, because we conclude that Claimant's appeal was not frivolous, we deny Employer's request for attorneys' fees pursuant to Pa. R.A.P. 2744.

_____
PATRICIA A. McCULLOUGH, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon Bouges,                 :
         Petitioner         :
                             :    No. 565 C.D. 2022
       v.                   :
                             :
City of Philadelphia (Workers'     :
Compensation Appeal Board),      :
              Respondent    :

## ***ORDER***

AND NOW, this 30th day of August, 2023, the May 10, 2022 order of the Workers' Compensation Appeal Board hereby is AFFIRMED. Respondent City of Philadelphia's request for attorneys' fees pursuant to Pennsylvania Rule of Appellate Procedure 2744 is DENIED.

 

_____
PATRICIA A. McCULLOUGH, Judge