**[J-60-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| VINCENT SICILIA | : | No. 14 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court dated June 7, |
| | : | 2022, at No. 747 CD 2021 |
| | : | Reversing the Order of the Workers' |
| API ROOFERS ADVANTAGE PROGRAM | : | Compensation Appeal Board dated |
| (WORKERS' COMPENSATION APPEAL | : | June 25, 2021, and Remanding at |
| BOARD) | : | No. A20-0734 |
| | : | |
| | : | ARGUED:  October 18, 2023 |
| APPEAL OF: API ROOFERS ADVANTAGE | : | |
| PROGRAM | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE BROBSON**                                    **DECIDED:  July 17, 2024**

Section 306(a.3) of the Workers' Compensation Act (Act)[1] provides, in relevant part, that, "[w]hen an employe has received total disability compensation . . . for a period of [104] weeks . . . , the employe shall be required to submit to a medical examination which shall be requested by the insurer . . . *to determine the degree of impairment due to the compensable injury, if any*."  77 P.S. § 511.3(1) (emphasis added).  If, following that medical examination—which is also known as an impairment rating evaluation (IRE)—an IRE physician-evaluator determines that the claimant has an impairment rating that is less than 35%, the claimant's indemnity benefits will be modified from total disability to partial disability.  *See* Section 306(a.3)(2) of the Act, 77 P.S. § 511.3(2).  The modification from total disability to partial disability does not affect the amount of the claimant's indemnity

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of October 24, 2018, P.L. 714, 77 P.S. § 511.3.

benefits but, instead, limits the claimant's receipt of indemnity benefits to a 500-week period of partial disability. 77 P.S. § 511.3(3).

In *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017), this Court held that an IRE physician-evaluator, who calculated the claimant's impairment rating based solely on the injuries set forth in the notice of compensation payable (NCP) and did not consider whether certain psychological conditions reported by the claimant as having resulted from the work-related injury "were fairly attributable to [the c]laimant's compensable injury," failed to satisfy his obligation under the prior version of Section 306(a.3)[2] to determine the degree of the claimant's

---

[2] Prior to the enactment of Section 306(a.3) of the Act, the modification of a claimant's benefits from total disability to partial disability based upon the results of an IRE was addressed by Section 306(a.2) of the Act. Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2 (repealed 2018). Section 306(a.2) provided, in relevant part, that an IRE physician-evaluator was required to determine a claimant's whole-person impairment rating using the "most recent edition" of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" (AMA Guides). In *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*Protz I*), however, the Commonwealth Court declared Section 306(a.2) to be "an unconstitutional delegation of legislative authority insofar as it proactively approved versions of the AMA Guides beyond the Fourth Edition without review." *Protz I*, 124 A.3d at 416. Based on this conclusion, the Commonwealth Court vacated the Workers' Compensation Appeal Board's (Board) decision "with respect to [the e]mployer's modification petition and remand[ed the] matter to the Board with instruction to remand to the [workers' compensation judge (WCJ)] to apply the Fourth Edition of the AMA Guides." *Id.* This Court, in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*), agreed with the Commonwealth Court that Section 306(a.2) violated Article II, Section 1 of the Pennsylvania Constitution by delegating the General Assembly's lawmaking power to the American Medical Association because the American Medical Association would have been free to revise the standards for determining a claimant's whole-person impairment rating at any time with unfettered discretion. *Protz II*, 161 A.3d at 833-37. This Court disagreed, however, with the Commonwealth Court's remedy, concluding that, as a result of the unconstitutional delegation, the entirety of Section 306(a.2) had to be stricken. *Id.* at 841. In so doing, this Court essentially struck the entire IRE process from the Act. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. In response thereto, the General Assembly repealed Section 306(a.2) and reestablished the IRE process—in a manner intended to cure the
(continued…)

impairment "due to the compensable injury," thereby rendering the IRE invalid. *Duffey*, 152 A.3d at 988-91. Stated another way, this Court held that, when performing an IRE, IRE "physician-[evaluators] must exercise independent professional judgment to make a whole-body assessment of the degree of impairment due to the compensable injury . . . , which discernment cannot be withheld on the basis that the [IRE] physician-[evaluator] believes the undertaking is a more limited one." *Id.* at 996 (internal citation and quotation marks omitted).

In this discretionary appeal, we consider whether, in the matter now before us, the Commonwealth Court impermissibly expanded this Court's holding in *Duffey* so as to usurp the WCJ's authority to determine the nature and extent of a compensable injury and/or whether the Commonwealth Court substituted its assessment of the credibility of the witnesses for that of the factfinder when it reversed the Board's decision and remanded the matter for the reinstatement of Vincent Sicilia's (Claimant) total disability benefits. For the reasons explained more fully below, I would conclude that the Commonwealth Court both impermissibly expanded this Court's holding in *Duffey* and substituted its assessment of credibility for that of the factfinder. Accordingly, I would reverse the Commonwealth Court's order.

---

constitutional deficiency identified in *Protz I and Protz II*—in Section 306(a.3). Of further note, Section 306(a.3) lowered the threshold percentage of impairment from less than 50% to less than 35%. *See* 77 P.S. § 511.3(2).

This Court's decision in *Protz II* and the General Assembly's subsequent repealment of Section 306(a.2) of the Act and enactment of Section 306(a.3) of the Act have no effect on this Court's decision in *Duffey* or my analysis. The statutory language from Section 306(a.2) that this Court interpreted in *Duffey*—*i.e.*, "to determine the degree of impairment due to the compensable injury, if any"—remains the same in Section 306(a.3).

## I. BACKGROUND

The origin of this matter dates back almost 25 years. On August 25, 1999, while in the course and scope of his employment with API Roofers Advantage Program (Employer), Claimant sustained injuries to his back and left knee when the ladder that he was using to descend from a building's roof collapsed. As the ladder collapsed, Claimant grabbed on to a wall, twisted his body, and struck his left knee. A coworker then grabbed Claimant and pulled him back onto the roof. Employer accepted liability for a lumbar strain and left knee contusion pursuant to a notice of temporary compensation payable (NTCP), which subsequently converted to an NCP by operation of law.

Sometime thereafter, Claimant filed a review petition, seeking to amend the description of his work-related injury to include various physical and psychological injuries. During the proceedings on that petition, the parties stipulated that, in addition to the accepted lumbar strain and left knee contusion, Claimant also sustained chronic pain syndrome and chronic adjustment disorder with anxiety and depression as a result of the August 25, 1999 work-related incident. The parties also presented competing medical evidence relative to the work relatedness of the physical injuries to Claimant's neck, cervical spine, and upper extremities. By decision and order dated January 28, 2003, a WCJ denied and dismissed Claimant's review petition. Based on his credibility determinations, the WCJ concluded that Claimant failed to meet his burden of proving that he sustained any physical injuries as a result of the August 25, 1999 work-related incident other than those set forth in the NTCP/NCP. The WCJ did, however, approve the parties' stipulation relative to the work-relatedness of the alleged psychological injuries, thereby amending the description of Claimant's work-related injury to include chronic pain syndrome and chronic adjustment disorder with anxiety and depression.

Since that time, the parties have litigated various petitions, throughout which the description of Claimant's work-related injury has remained the same and has not been further amended. Specifically, in 2008, Claimant filed a penalty petition, wherein he alleged that Employer violated the Act by failing to pay the medical bills incurred in connection with multiple surgeries performed on Claimant's lumbar spine in September 2007. In 2011, following some rather protracted litigation due to an appeal and subsequent remand, a WCJ determined that Claimant met his burden of establishing that those surgeries were related to his work-related injury. Given, however, that the medical bills and accompanying medical records submitted to Employer for payment showed a principal diagnosis of spondylolisthesis, which was not part of the accepted work-related injury, the WCJ denied Claimant's penalty petition. The Board affirmed the WCJ's decision and, in doing so, specifically emphasized that "[t]he WCJ did not amend the description of injury; rather, he determined Claimant's back surger[ies] to be causally related to the work[-related] injury." (Reproduced Record (R.R.) at 58a n.1.) In 2014, Claimant filed another penalty petition, alleging that Employer violated the Act by failing to pay certain medical bills. During the proceedings on that petition, the parties entered into a stipulation, agreeing that Employer had paid the subject medical bills and that Employer was not subject to penalties. A WCJ approved the parties' stipulation and dismissed the penalty petition as moot. Relevantly, the parties' stipulation described Claimant's work-related injury as a lumbar strain, a left knee contusion, chronic pain syndrome, and chronic adjustment disorder with anxiety and depression.

Thereafter, on October 28, 2019, Employer filed a modification petition—the petition at issue here—seeking to modify Claimant's indemnity benefits from total disability to partial disability based upon the results of an IRE performed by Daisy A. Rodriguez, M.D., on August 1, 2019. At a hearing before the WCJ, Employer presented

the deposition testimony of Dr. Rodriguez, as well as Dr. Rodriguez's underlying IRE report and IRE addendum report.  Claimant did not testify on his own behalf, nor did he present medical testimony or any other substantive evidence.  Based upon the accepted work-related injury—*i.e.*, a lumbar strain, a left knee contusion, chronic pain syndrome, and chronic adjustment disorder with anxiety and depression—and according to the Sixth Edition of the AMA Guides, Dr. Rodriguez determined that Claimant had reached maximum medical improvement as of September 27, 2017, and had a whole-person impairment rating of 23% or 25%.  Dr. Rodriguez explained that the 23% whole-person impairment rating did not give separate weight to Claimant's chronic pain syndrome diagnosis because the AMA Guides instruct an IRE physician-evaluator not to do so when there is a separate diagnosis that encompasses the pain generator.  Dr. Rodriguez further explained that Claimant suffers from low back pain, left knee pain, and emotional and mental distress, all of which encompass Claimant's chronic pain syndrome.  Dr. Rodriguez, nevertheless, indicated that, if she were to ignore the AMA Guides and give Claimant's chronic pain syndrome diagnosis separate weight—given that chronic pain syndrome is a separately identified diagnosis in the description of Claimant's work-related injury—Claimant would have a whole-person impairment rating of 25%.

Although Dr. Rodriguez specifically indicated in her IRE report that she had calculated Claimant's whole-person impairment rating based solely upon the accepted work-related injury, Dr. Rodriguez identified additional diagnoses that she believed were causally related to the August 25, 1999 work-related incident, namely a lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy.  (*See* R.R. at 80a ("Given the constraints stipulated by the . . . Act, I am compelled to provide my rating only on the diagnoses currently accepted via [NTCP], NCP, mutual stipulation, and/or [prior] decision.").)  At Employer's request, Dr. Rodriguez prepared the IRE addendum report,

indicating that, if she were to determine Claimant's whole-person impairment rating based not only upon the accepted work-related injury but also those additional diagnoses that she believed were attributable to the August 25, 1999 work-related incident, Claimant would have a whole-person impairment rating of 43% or 45%, depending on whether she separately weighted/accounted for Claimant's chronic pain syndrome diagnosis.[3]  Dr. Rodriguez explained that her consideration of the more severe diagnosis to Claimant's lumbar spine—*i.e.*, the lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy rather than the lumbar strain—resulted in a higher whole-person impairment rating.  Importantly, the difference between the 25% and 45% whole-person impairment ratings is significant because the former is below the 35% threshold necessary to modify Claimant's indemnity benefits from total disability to partial disability, whereas the latter is above the threshold and would not result in such a modification.  *See* Section 306(a.3)(2) of the Act, 77 P.S. § 511.3(2) (providing that, if impairment rating "is equal to or greater than [35%] impairment under the [AMA Guides], the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits," but, if impairment rating is "less than [35%] impairment under the [AMA Guides], the employe shall then receive partial disability benefits").

By decision and order dated August 24, 2020, the WCJ granted Employer's modification petition.  In so doing, the WCJ found Dr. Rodriguez's testimony that Claimant had reached maximum medical improvement and, based on the accepted work-related injury, had a whole-person impairment rating of 25% to be credible.  The WCJ also found,

---

[3] The 2% difference in Claimant's whole-person impairment rating is not relevant to my analysis today.  For ease of discussion, throughout the remainder of this opinion, I will refer to the whole-person impairment ratings that separately account for Claimant's chronic pain syndrome—*i.e.*, 25% or 45%, depending on whether the additional diagnoses that Dr. Rodriguez attributed to the August 25, 1999 work-related incident are included.

however, that Dr. Rodriguez's testimony regarding the additional diagnoses that she attributed to the August 25, 1999 work-related incident were not credible. The WCJ explained that Claimant's work-related injury had been described in numerous prior decisions and that such description had never been amended or expanded to include those additional diagnoses. Accordingly, the WCJ concluded that Employer had met its burden of proving that Claimant had received over 104 weeks of temporary total disability benefits, had reached maximum medical improvement, and had a whole-person impairment rating less than 35%. The WCJ, therefore, ordered that Claimant's indemnity benefits be modified from total disability to partial disability as of August 1, 2019.

Claimant appealed the WCJ's decision to the Board. Relying on *Duffey*, Claimant argued to the Board that the WCJ erred by failing to consider the additional diagnoses that Dr. Rodriguez identified in her IRE report and attributed to the August 25, 1999 work-related incident but that had not been formally added to the description of the accepted work-related injury. In support, Claimant pointed out that he underwent multiple surgeries to his lumbar spine to treat those additional diagnoses and a WCJ had previously determined that Employer was responsible for the payment of the medical bills incurred in connection with those surgeries.

The Board, however, disagreed with Claimant's position, noting that the WCJ found Dr. Rodriguez's testimony relative to the additional diagnoses and their causal relationship to the August 25, 1999 work-related incident to be not credible, which, the Board explained, was wholly within the WCJ's purview as factfinder. The Board emphasized that, pursuant to *Duffey*, an IRE physician-evaluator "performing an IRE must apply professional judgment to assess conditions that could be fairly attributable to a compensable injury and failure to exercise that judgment may render the IRE invalid." (R.R. at 186.) The Board explained that, here, Dr. Rodriguez applied her professional

judgment, consistent with *Duffey*, because, in her initial IRE report, Dr. Rodriguez recognized that Claimant's lumbar spine condition could have included a lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy but differentiated those diagnoses from the accepted work-related injury. The Board further explained that, given the WCJ's conclusion that the description of Claimant's work-related injury did not include any diagnoses other than those previously accepted, stipulated, and/or adjudicated, Dr. Rodriguez's determination that Claimant had a whole-person impairment rating of 25% was a valid assessment. For these reasons, the Board concluded that the WCJ did not err by modifying Claimant's indemnity benefits from total disability to partial disability as of August 1, 2019, and affirmed the WCJ's decision. Claimant then petitioned the Commonwealth Court for review of the Board's order.

In a divided, published opinion, a three-judge panel of the Commonwealth Court reversed the Board's order and remanded the matter for the reinstatement of Claimant's total disability benefits. *Sicilia v. API Roofers Advantage Program (Workers' Comp. Appeal Bd.)*, 277 A.3d 1213 (Pa. Cmwlth. 2022). Before the Commonwealth Court, Claimant argued that the Board erred by affirming the WCJ's modification of his indemnity benefits from total disability to partial disability because, pursuant to *Duffey*, injury descriptions from prior workers' compensation decisions do not dictate what may be considered during the IRE process. *Id.* at 1216.

The Commonwealth Court majority began its analysis by observing that the Board's decision essentially "boil[s] down to an assertion that the decision of a WCJ describing the injuries controls the IRE process." *Id.* at 1218. The Commonwealth Court reasoned, however, that, quite "[t]o the contrary, Section 306(a.3)(1) [of the Act]—as elaborated in [*Duffey*]—places a great deal of discretion in the [IRE] physician-evaluator to determine what diagnoses are 'due to' a work-related injury, outside the ordinary

modification process." *Id.* Noting that a WCJ may, upon petition, amend a work-related injury description at any time but also acknowledging that no such petition or request for amendment had been filed/made in this case, the Commonwealth Court, nevertheless, emphasized that it was "disingenuous to assert that an injury description in one WCJ's decision, or a string of such decisions, binds subsequent WCJs later in the history of a claim." *Id.* at 1218 n.6. The Commonwealth Court further noted that, "[e]ven when an injury description is not formally amended, a diagnosis may become an accepted injury if a WCJ finds it was caused or aggravated by the work injury." *Id.* (citing *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008)).

With these principles in mind, the Commonwealth Court majority considered whether the modification of Claimant's indemnity benefits was appropriate under the circumstances presented here. In so doing, the Commonwealth Court reasoned that Dr. Rodriguez's IRE report and testimony indicated that she felt that her whole-person impairment rating "was constrained by the currently accepted diagnoses," which the Commonwealth Court suggested was based upon a "misapprehen[sion of] her responsibility as a[n IRE] physician-evaluator in her initial calculation of Claimant's whole[-]person impairment rating." *Id.* at 1218. The Commonwealth Court explained that, while the WCJ, as the factfinder, had the authority to make credibility determinations, "[t]he WCJ's reasoning for rejecting Dr. Rodriguez's testimony concerning the additional diagnoses, and the higher [impairment] rating resulting from such inclusion, was not, in fact, a credibility determination based on evaluation of the evidence, but rather[,] a misapprehension of the discretion accorded [to] an IRE physician-evaluator." *Id.* at 1219. The Commonwealth Court further explained that "[t]he only reason [the WCJ] proffered for discrediting the additional diagnoses was that [such diagnoses] had not been previously found by other WCJs." *Id.* The Commonwealth Court, therefore, concluded

that, "[s]imply put, the WCJ erred as a matter of law in constraining the IRE review solely to the earlier accepted descriptions of Claimant's work injuries." *Id.*

In a dissenting opinion, President Judge Emerita Leavitt faulted the majority for "reject[ing] two express credibility determinations of the WCJ"—*i.e.*, that Dr. Rodriguez's testimony was credible insofar as Dr. Rodriguez determined that Claimant had a whole-person impairment rating of 25% and that Dr. Rodriguez's testimony was not credible to the extent that Dr. Rodriguez determined that Claimant's work-related injury included the additional diagnoses that she identified in her IRE report and attributed to the August 25, 1999 work-related incident. *Id.* at 1219-20 (Leavitt, J., dissenting). Judge Leavitt explained that the WCJ discredited Dr. Rodriguez's testimony relative to the additional diagnoses, not because of a mistaken belief that Dr. Rodriguez was not permitted to consider additional diagnoses related to Claimant's work-related injury, but because the WCJ simply did not believe Dr. Rodriguez's testimony that the additional diagnoses were attributable to the August 25, 1999 work-related incident. *Id.* In that regard, Judge Leavitt highlighted that the WCJ reviewed the record, including Dr. Rodriguez's testimony, and credited only the portion of Dr. Rodriguez's testimony that supported a finding that Claimant had a whole-person impairment rating of 25%. *Id.* at 1220. Judge Leavitt observed that, as a result of that credibility determination, the record contains "no credited evidence to support a finding that Claimant ha[d] a whole-body impairment [rating] greater than 35%" that would have entitled him to continue to receive total disability benefits. *Id.* at 1221; *see also* Section 306(a.3)(2) of the Act, 77 P.S. § 511.3(2). For these reasons, Judge Leavitt would have affirmed the Board's

order, which, according to her, followed *Duffey*.[4] *Sicilia*, 277 A.3d at 1221 (Leavitt, J., dissenting).

## II.  ISSUES

This Court granted discretionary review to consider the following issues, as stated by Employer:

> (1) Did the Commonwealth Court impermissibly expand the holdings in *Duffey* . . . as to usurp the authority of the [WCJ] to determine the nature and extent of the compensable injury?
>
> (2) Did the Commonwealth Court err in reversing the . . . Board by substituting [its] assessment of the credible testimony for that of the fact[]finder?

*Sicilia v. API Roofers Advantage Program (Workers' Comp. Appeal Bd.)*, 292 A.3d 844 (Pa. 2023) (per curiam) (some alterations in original).  "This Court's standard of review in workers' compensation appeals is settled:  we will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed[,] or that any necessary finding of fact is not supported by substantial evidence of record."  *Colpetzer v. Workers' Comp. Appeal Bd. (Standard Steel)*, 870 A.2d 875, 882 (Pa. 2005) (citing 2 Pa. C.S. § 704).

## III.  PARTIES' ARGUMENTS

Employer argues that a WCJ unquestionably has the authority to set the nature and extent of the compensable injury in workers' compensation matters and that the Commonwealth Court erred by usurping that authority in this case.  Emphasizing how

---

[4] Judge Leavitt, stressing that "the adjudicated injury must be static before an IRE can be done," further believed that *Duffey* should be reconsidered in light of the facts of this case. *Sicilia*, 277 A.3d at 1221 (Leavitt, J., dissenting).  In Judge Leavitt's view, *Duffey* "placed additional requirements on the [IRE]" process and "muddled the law in this area" by "tak[ing] the IRE into issues of liability and causation for a work injury when the sole purpose of an IRE is to determine the claimant's disability status after maximum medical improvement from the adjudicated work-related injury."  *Id.* at 1220, 1221.

critically important it is to have the description of the compensable injury definitively established for the workers' compensation system to function properly, Employer claims that Section 413(a) of the Act[5] sets forth the mechanism under which a WCJ may amend the description of a work-related injury. According to Employer, Section 413(a) allows a WCJ "[t]o correct an injury description that was inaccurate at the time the . . . NCP was issued" during the pendency of any petition, but, "to expand, retract[,] or change the scope of the [work-related] injury" or "to add consequential conditions that did not exist at the time the NCP was issued," a WCJ must have a pending review petition before her. (Employer's Br. at 19-20.) Employer maintains, however, that a case's procedural posture can impact a WCJ's ability to change an injury description because "the doctrine of technical *res judicata* prevents re-litigation of claims and issues in subsequent litigation that were or could have been litigated previously." (*Id.* at 20 (relying upon *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.*), 960 A.2d 949 (Pa. Cmwlth. 2008), *appeal denied*, 971 A.2d 494 (Pa. 2009)).) Employer contends that, here, "the nature and extent of the compensable injury attributable to Claimant's unfortunate fall . . . has been set through the adjudicatory process over many years." (*Id.* at 21.)

Employer highlights that, pursuant to Section 306(a.3)(1) of the Act, an impairment rating must be tethered to the "compensable injury," as an IRE physician-evaluator is

---

[5] 77 P.S. §§ 771-772. Section 413(a) of the Act provides, in relevant part:

A [WCJ] may, at any time, review and modify or set aside a[n NCP] and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] or agreement was in any material respect incorrect.

A [WCJ] designated by the department may, at any time, modify, reinstate, suspend, or terminate a[n NCP] . . . upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased . . . .

charged with the responsibility to determine "the degree of impairment due to the compensable injury, if any." (*Id.* at 24.) Adding that Section 306(a.3) "specifically provides [that] 'impairment' shall mean the percentage of permanent impairment resulting from the 'compensable injury,'" Employer contends that "[t]he [impairment] rating is not to include pre[]existing conditions or non-work related issues." (*Id.*) Employer submits that "the proper emphasis must be on what anatomic or functional abnormality stems from the 'compensable injury,'" as previously described "either on the Bureau acceptance document or through the adjudicatory process." (*Id.* at 24-25.) Employer suggests that, if an IRE physician-evaluator "is left on her own to determine what injury to rate," the IRE process would "lose[] its meaning," because the IRE physician-evaluator would have unfettered discretion to include "conditions that have been specifically excluded from the compensable injury;" for example, the IRE physician-evaluator "might include a preexisting condition or a condition already found not to be work[-]related if she believes them to be related." (*Id.* at 25.) In Employer's view, such unfettered discretion would be in direct contravention to the "explicit statutory directive" and the role of WCJs in the workers' compensation process, would thwart the purpose of the IRE process—*i.e.*, "to provide, where appropriate, a limit on the number of remaining weeks of compensation benefits"—and would encourage parties to shop for "friendly" IRE physician-evaluators. (*Id.* at 25-26.)

Employer, therefore, urges this Court to restore the focus of the IRE inquiry to Section 306(a.3)'s use of the phrase "compensable injury" and away from its use of the phrase "due to." Employer maintains that doing so would be entirely consistent with a plain reading of the statutory provision and would place appropriate limits on the IRE physician-evaluator—*i.e.*, "[t]he [IRE] physician-evaluator [would] still [be] able to exercise discretion to rate the injury as permitted by the [AMA] Guides, but the discretion to be

exercised [would be] limited to the variables presented by the established 'compensable injury.'" (*Id.* at 26.) Employer explains that, in this case, the Commonwealth Court "focused on the 'due to' language as authorization to [Dr. Rodriguez] to exercise unfettered discretion in the [impairment] rating process." (*Id.* at 27.) Employer points out that, while this Court's decision in *Duffey* may have provided the Commonwealth Court with the necessary rationale to reverse the Board's order, in *Duffey*, it was still the WCJ—not the IRE physician-evaluator—that ultimately expanded the scope of the compensable injury in connection with a review petition filed by the claimant pursuant to Section 403(a) of the Act. Employer maintains that, here, the Commonwealth Court utilized *Duffey* to improperly negate the WCJ's authority and permit Dr. Rodriguez to define the compensable injury, thereby expanding "the *Duffey . . .* premise beyond [its] facts." (*Id.* at 29.) Employer adds that, by "rating [Claimant's] impairment due to [what] she thought . . . the 'compensable injury' should be" rather than "rating the impairment due to the compensable injury," Dr. Rodriguez "substituted her belief of what the compensable injury was for that of the WCJ." (*Id.*)

Employer further emphasizes that an IRE physician-evaluator "is not in a position to weigh competing evidence or consider the procedural posture in which an allegation of expanded injuries arises;" rather, an IRE physician-evaluator is in a position to determine the degree of impairment "within the framework of the compensable injury," as set by the WCJ. (*Id.* at 29-30.) Employer notes that, as a practical matter, while, in this case, Dr. Rodriguez's usurpation of the WCJ's authority benefitted Claimant because it precluded the conversion of his indemnity benefits from total disability to partial disability, "it is not difficult to imagine a situation" where the IRE physician-evaluator exercises her unfettered discretion in manner detrimental to a claimant—*i.e.*, "where the IRE physician[-evaluator] rejects as not related injuries that have been adjudicated as compensable." (*Id.* at 31.)

Employer further suggests that the Act never contemplated that an IRE physician-evaluator would possess the power to usurp the WCJ's authority, as Dr. Rodriguez did here. Echoing the concerns identified by the dissents in both *Duffey* and the decision below and believing that this case exemplifies the problems flowing from *Duffey*, Employer asks this Court to reconsider *Duffey* and restore the WCJ to the appropriate role of factfinder.

Finally, Employer argues that the Commonwealth Court erred by "substituting its assessment of the credible medical testimony for that of the [WCJ]" in its "misguided and erroneous effort to follow *Duffey*." (*Id.* at 32, 35.) Employer contends that the WCJ explicitly accepted as credible Dr. Rodriguez's testimony that Claimant's whole-person impairment rating was 25% and rejected as not credible Dr. Rodriguez's testimony that Claimant's whole-person impairment rating was 45%. Employer emphasizes that "that incredible opinion cannot form the basis to deny" Employer's modification petition. (*Id.* at 33.) Citing well-settled law relative to a WCJ's exclusive authority to evaluate conflicting evidence, render findings of fact, and rule on the credibility of witnesses, Employer argues that the WCJ, here, articulated her reasons for her credibility determinations as required by that well-settled law. More specifically, Employer notes that the WCJ accepted Dr. Rodriguez's 25% whole-person impairment rating as credible because it was premised on Claimant's long-established compensable injury and rejected Dr. Rodriguez's 45% whole-person impairment rating as not credible "precisely because it was not limited to the parameters of the compensable injury." (*Id.* at 34.) Employer also challenges the Commonwealth Court's conclusion that the WCJ's decision in this regard was based upon a "misapprehension," as "[s]uch [a] misapprehension is nowhere evident in the record or in [the WCJ's] decision." (*Id.*) Employer, therefore, argues that, even if *Duffey* empowers an IRE physician-evaluator to rate conditions other than those

included in the compensable injury, "a circumstance that [Employer] believe[s] is not permitted [under] the . . . Act, there is no requirement that the WCJ must believe that rating." (*Id.* at 35.)

Claimant, on the other hand, argues that the Commonwealth Court did not usurp the WCJ's authority to determine the nature and extent of the compensable injury. In so arguing, Claimant admits that the sole issue before the WCJ was the degree of Claimant's impairment due to the compensable injury, not the nature and extent of the compensable injury itself. To that end, Claimant acknowledges that the WCJ did not have a pending review petition before her seeking to amend the description of the compensable injury and that the description of the compensable injury and Employer's liability to pay medical expenses in connection with that injury had already been fully decided in previous litigation. Claimant submits that, "[a]s *Duffey* makes clear, there is a tremendous distinction between injury and impairment, and the role of the [IRE physician-evaluator] under Section 306[(a.3)] of [t]he Act as well as the AMA Guides" is to determine the whole-person "impairment due to the [compensable] injury or reasonably flowing from the [compensable] injury." (Claimant's Br. at 9, 11.) Claimant further submits that the plain meaning of Section 306(a.3) requires the IRE physician-evaluator simply "to rate impairment[], not [to] determine the nature and extent of the compensable injury." (*Id.* at 10.) Claimant, nevertheless, maintains that Employer's arguments on appeal "ignore[] the already litigated fact that [the] surgeries [performed on his lumbar spine in September 2007] are fairly attributable to the work[-related] injury" and that, when you accept the fact that Employer was ordered to pay for those surgeries, which Claimant suggests were performed to treat something other than the accepted lumbar strain, Claimant had a whole-person impairment rating in excess of 35%. (*Id.* at 10.) For these reasons, Claimant posits that "Employer's request to overrule the sound holding of *Duffey*

is nothing more than an attempt to allow form to dominate over substance" and that the instant matter is not an appropriate vehicle by which "to distinguish or overrule *Duffey*." (*Id.* at 11, 12.)

Claimant next contends that the Commonwealth Court did not, as Employer suggests, substitute its assessment of credibility for that of the WCJ, but rather, correctly observed that the WCJ misapprehended the issue before her. In support, Claimant reiterates that the issue before the WCJ pertained to the degree of Claimant's permanent impairment due to the compensable injury, not the nature and extent of the compensable injury itself. Claimant maintains that the WCJ was clearly attempting to define the compensable injury, not Claimant's impairment, and, in so doing, ignored *Duffey*. Claimant adds that none of the WCJ's credibility determinations are supported by substantial evidence and, as such, they are "fatally flawed." (*Id.* at 13-14.) Claimant submits that, by finding Dr. Rodriguez's testimony relative to her whole-person impairment rating of 45% to be not credible, the WCJ ignored the tenets of *Duffey*. To that end, Claimant points out that the whole-person impairment rating "credited by the [WCJ] explicitly did not rate any impairment for the [surgeries] that Claimant underwent [on his lumbar spine] as a result of the [work-related] injury." (*Id.* at 14.) Claimant, therefore, contends that the Commonwealth Court had no choice but to reverse the Board's decision and remand for the reinstatement of his total disability benefits because the evidence of record does not support the modification of his indemnity benefits.

## IV. DISCUSSION

A brief summary of the IRE process, including the role and authority of both the IRE physician-evaluator and the WCJ, will be helpful to my analysis. Generally speaking, Section 306(a.3) of the Act governs the manner in which an employer may obtain a modification of a claimant's indemnity benefits from total disability to partial disability

based upon the results of an IRE. *See* 77 P.S. § 511.3. Section 306(a.3) provides, in relevant part, that "[w]hen an employe has received total disability compensation . . . for a period of [104] weeks . . . the employe shall be required to submit to a medical examination . . . to determine *the degree of impairment due to the compensable injury, if any.*" 77 P.S. § 511.3(1) (emphasis added). The IRE physician-evaluator is independent—*i.e.*, he/she is chosen by agreement of the parties or is designated by the Department of Labor and Industry—and is charged with the responsibility of determining the degree of a claimant's impairment due to the compensable injury. 77 P.S. § 511.3(1). "Impairment" is defined as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent," and "impairment rating" is defined as "the percentage of permanent impairment of the whole body resulting from the compensable injury . . . not [from] any preexisting work-related or nonwork-related impairment." 77 P.S. § 511.3(8)(i)-(ii). If, following the IRE, the IRE physician-evaluator determines that the claimant has a whole-person impairment rating that is less than 35%, the claimant's indemnity benefits will be modified from total disability to partial disability. 77 P.S. § 511.3(2). If, however, the IRE physician-evaluator determines that the claimant has a whole-person impairment rating that is equal to or greater than 35%, the claimant will be presumed to be totally disabled and will continue to receive total disability benefits. 77 P.S. § 511.3(2).

In the event that the employer requests that the claimant submit to an IRE within 60 days of the expiration of the claimant's receipt of 104 weeks of total disability benefits and the IRE physician-evaluator determines that the claimant has a whole-person impairment rating that is less than 35%, "the change in disability status is automatic." *Diehl v. Workers' Comp. Appeal Bd. (I.A. Constr.)*, 5 A.3d 230, 245 (Pa. 2010). A claimant that is dissatisfied with the IRE determination has "the right to immediately appeal the

[automatic/unilateral] change in his . . . disability status and seek a hearing before a WCJ" by filing a petition to review the IRE determination. *Johnson v. Workers' Comp. Appeal Bd. (Sealy Components Grp.)*, 982 A.2d 1253, 1257 (Pa. Cmwlth. 2009), *appeal denied*, 996 A.2d 493 (Pa. 2010). If, on the other hand, the employer requests that the claimant undergo the IRE after the 60-day window has expired, the "employer may still seek [a] modification of benefits from total to partial based on the IRE, but the normal administrative process for obtaining a modification of benefits applies." *Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1163 (Pa. Cmwlth. 2015). As this Court has explained, under those circumstances,

> [t]he IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition to establish that the claimant's disability status should be changed from total to partial. In that event, the IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer. It is entitled to no more or less weight than the results of any other examination. The [IRE] physician[-evaluator] who performed the IRE is subject to cross-examination, and the WCJ must make appropriate credibility findings related to the IRE and the performing [IRE] physician[-evaluator]. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

*Diehl*, 5 A.3d at 245. "[I]t is a fundamental tenet of workers' compensation law that the WCJ, as fact[]finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pa. Inc.*, 116 A.3d at 1162. "As the ultimate fact[]finder, the WCJ has exclusive province over questions of credibility and evidentiary weight[] and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* In sum, the proceedings before a WCJ in connection with an IRE determination can generally be initiated in one of two ways: (1) by the claimant filing a petition to review the IRE determination; or (2) by the employer filing a modification petition.

Additionally, before I can determine whether the Commonwealth Court impermissibly expanded *Duffey*'s holdings, I must first comprehend this Court's decision in that case. In *Duffey*, a workers' compensation claimant sustained injuries to both of his hands when he picked up live electrical wires while repairing a machine for his employer. *Duffey*, 152 A.3d at 985. The employer accepted liability for the claimant's work-related injury by issuing an NCP, which identified "bilateral hands" as the affected body parts; "electrical burn" as the type of injury; and "stripping some electrical wire" as the description of the work-related incident. *Id.* After the claimant had received total disability benefits for a period of 104 weeks, the employer requested an IRE pursuant to Section 306(a.2) of the Act and, in connection with its request, described the compensable injury as "bilateral hands-nerve and joint pain." *Id.* at 985-86. Following the IRE, the IRE physician-evaluator assigned the claimant a whole-person impairment rating of 6%, which prompted the employer to provide the claimant with notice that his indemnity benefits would be modified from total disability to partial disability. *Id.* at 986. In response thereto, the claimant filed a review petition, wherein he attacked the validity of the IRE on the basis that the IRE physician-evaluator failed to rate the full range of his work-related injuries, given that he "suffered from adjustment disorder with depressed mood and chronic post-traumatic stress disorder as a result of his work[-related] injury." *Id.*

Before the WCJ, the claimant entered evidence into the record to support the additional diagnoses, including: (1) his own testimony that he had developed and continued to experience "impairment in the use of his hands, agonizing deep pain, and debilitating exhaustion;" (2) the deposition testimony of his family physician, who had diagnosed him with and had treated him for the adjustment disorder with depressed mood and chronic post-traumatic stress disorder; and (3) the deposition testimony of a

neurologist, "who attested that [the c]laimant's injury had evolved into a disabling, chronic neuropathic pain syndrome attended by emotional and cognitive changes." *Id.* at 986-97. In opposition thereto, the employer introduced the deposition testimony of the IRE physician-evaluator, who explained that the whole-person impairment rating "did not account for [the] asserted work-related adjustment disorder or post-traumatic stress syndrome" because he was not qualified to assess those conditions and was specifically asked to assess only the electrical burn injuries. *Id.* at 987. The employer also introduced the deposition of a clinical and forensic psychiatrist, who evaluated the claimant, concluded that the claimant had fully recovered from the adjustment disorder with anxiety and depressed mood, and expressed disagreement with the post-traumatic stress disorder diagnosis. *Id.* The WCJ ultimately granted the claimant's review petition and directed that the claimant's indemnity benefits not be modified. *Id.* In so doing, the WCJ accepted the claimant's evidence as credible, rejected the employer's conflicting evidence as not credible, directed that the claimant's psychological conditions be added to the NCP, and concluded that the IRE was invalid because the IRE physician-evaluator did not consider those psychological conditions. *Id.* The Board reversed, and the Commonwealth Court thereafter affirmed the Board's order. *Id.* at 987-88.

On appeal to this Court, in a divided opinion written by Chief Justice Saylor, this Court reversed the Commonwealth Court's order and remanded the matter "for reinstatement of the finding of invalidity rendered by the WCJ." *Id.* at 996. Focusing on the fact that Section 306(a.2) of the Act "explicitly invest[ed] in [IRE] physician-evaluators the obligation to 'determine the degree of impairment *due to* the compensable injury,'" this Court explained that these express terms required the IRE physician-evaluator to "consider and determine causality in terms of whether any particular impairment is 'due to' the compensable injury." *Id.* at 989 (emphasis in original) (quoting Section 306(a.2)(1)

of the Act, 77 P.S. § 511.2(1) (repealed 2018)).  Adding that an IRE concerns "the

percentage of permanent impairment *of the whole body* resulting from the compensable

injury," this Court reasoned that, while it did not disagree that an NCP should define

"compensable injury" for purposes of the IRE, "[s]uch recognition . . . simply does not

determine the range of impairments which may be 'due to' such injury."  *Id.* (quoting

Section 306(a.2)(8)(ii) of the Act, 77 P.S. § 511.2(8)(ii) (repealed 2018)).  This Court,

therefore, held that IRE "physician-[evaluators] must exercise independent professional

judgment to make a whole-body assessment of 'the degree of impairment due to the

compensable injury,' which discernment cannot be withheld on the basis that the

physician-[evaluator] believes the undertaking is a more limited one."  *Id.* at 996 (internal

citation omitted).  Applying its holding to the facts, this Court reasoned:

> [I]t is apparent from the record that the [IRE p]hysician–[e]valuator did not
> apply professional judgment to assess . . . the psychological conditions
> identified by [the c]laimant during the IRE examination; nor did he determine
> whether such conditions as might have been diagnosed were fairly
> attributable to [the c]laimant's compensable injury.  Instead of abiding by
> the directives of Section 306(a.2) and the AMA Guides in such regards, the
> [IRE p]hysician–[e]valuator purported to take a different set of instructions
> from [the e]mployer.  Proceeding as such, the [IRE p]hysician–[e]valuator
> simply ignored a range of potential diagnoses and impairments.  Again,
> however, the [IRE p]hysician–[e]valuator was bound to take his guidance,
> not from [the e]mployer, but from Section 306(a.2) and the AMA Guides.[6]

---

[6] In a dissenting opinion, then-Justice Baer faulted the majority for treating the claimant's psychological conditions as "impairments" that derived from his accepted work-related injury, when it "seem[ed] obvious that [those conditions did] not derive from [the] claimant's [accepted] hand injury but, if compensable, [were] a result of being electrocuted."  *Duffey*, 152 A.3d at 996 (Baer, J., dissenting).  Justice Baer explained that, under the majority's holding, "even in a case like this, where the [c]laimant himself does not purport that the impairment he is expressing . . . is related to his accepted . . . injury, if the [IRE] physician[-evaluator] fails to evaluate those conditions, then the IRE is to be disregarded by the WCJ."  *Id.*  Justice Baer further explained that this "will undermine the IRE process in general and permit claimants easily to invalidate otherwise fair IRE proceedings by simply expressing new physical and/or psychological conditions unknown to the employer, even ones that clearly were not derived from the injury set forth in the (continued…)

*Id.* at 990 (footnote omitted) (citations omitted).

In my view, while *Duffey* may have stretched the bounds of the IRE physician-evaluator's authority by requiring her to consider whether certain conditions— *i.e.*, conditions not included in the description of the accepted work-related injury but reported by the claimant at the time of the IRE—were fairly attributable to the compensable injury and, if so, to include those conditions in her determination of the claimant's whole-person impairment rating, *Duffey* was never intended to eliminate the WCJ's exclusive role to determine the nature and extent of a claimant's work-related

NCP." *Id.* at 997. In Justice Baer's view, the IRE physician-evaluator "properly limited his evaluation to the impairments associated with the compensable injury set forth in the NCP," and, therefore, he would have affirmed the Commonwealth Court's decision. *Id.* at 997-98.

In a separate dissenting opinion, Justice Wecht expressed his belief that the majority's "reading of [Section] 306(a.2) [of the Act] will compromise the [IRE] process, which exists to quantify a claimant's whole[-]body impairment due to his established work-related injuries." *Id.* at 998 (Wecht, J., dissenting). Justice Wecht explained that "[t]he [m]ajority's principal misstep [was] that it mislabel[ed the claimant's] psychological conditions, both of which [were] injuries in their own right, as 'impairments' that the IRE physician[-evaluator was required to] diagnose and evaluate." *Id.* (footnote omitted). Justice Wecht suggested that, in doing so, the majority failed to consider the Act's definition of "impairment" and, in turn, that "impairment ratings quantify losses and limitations, not diseases and disorders." *Id.* at 999. Justice Wecht pointed out that, "[n]otwithstanding its repeated insistence that its holding flow[ed] from the plain language of Section 306(a.2), the [m]ajority fail[ed] to elucidate the principle which can transform the statutory phrase 'the degree of impairment due to the compensable injury' into the unconfined styling 'the degree of impairment due to injuries not yet determined to be compensable.'" *Id.* (footnote omitted). Justice Wecht explained that the majority essentially relieved "claimants of their burden of proving a causal relationship between the accepted work-related injury and any subsequently arising psychological injuries." *Id.* at 1001. In Justice Wecht's view, an IRE physician-evaluator "who proceeds according to his or her own assessment is not a substitute for a WCJ who first evaluates conflicting expert testimony and then reaches a reasoned decision." *Id.* at 1002. In sum, Justice Wecht opined that "[t]he [m]ajority's interpretation of Section 306(a.2), one which neither party ha[d] advanced and which the plain language [did] not support, will fundamentally alter the IRE process[,] . . . will relieve claimants of their burden to prove compensable injuries[,] . . . [will] turn [IRE physician-evaluators] into junior varsity WCJs[,]" and will likely result in "heightened confusion and increased litigation." *Id.* at 1003-04.

injury through her determinations of credibility and evidentiary weight. Rather, *Duffey* was meant to apply only under very unique circumstances: where, during the IRE proceedings, the claimant sought to litigate before the WCJ the extent of his work-related injury and, in doing so, introduced his own medical evidence to establish that a material mistake of fact or law was made at the time the NTCP/NCP was issued or that the scope of the work-related injury had changed. *Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 872 A.2d 159, 166-69 (Pa. 2005); *see also* Section 413(a) of the Act, 77 P.S. §§ 771-772. *Duffey* was never meant to apply to situations where the claimant did not put forth any additional medical evidence before the WCJ supporting his request to amend the description of his work-related injury and, instead, sought to rely solely on the IRE physician-evaluator's opinion relative to his whole-person impairment rating to expand the scope of his work-related injury and, in turn, increase the percentage of his whole-person impairment rating. In other words, I would cabin *Duffey* to its particular facts and hold that, while *Duffey* requires the IRE physician-evaluator to consider additional diagnoses reported by the claimant at the time of the IRE but not included in the description of the accepted work-related injury, the WCJ is only required to consider a whole-person impairment rating based on those additional diagnoses if the claimant introduces medical evidence supporting the work-relatedness thereof and the WCJ, based on his credibility determinations, amends the description of the accepted work-related injury to include those diagnoses. Limiting *Duffey* in this manner would ensure that this Court did not: (1) usurp the WCJ's authority to define the nature and extent of the work-related injury through her determinations of credibility and evidentiary weight; (2) alter the independent nature of the IRE process; or (3) create procedural due process concerns—*i.e.*, create a situation where the employer is not given notice or an opportunity

to offer evidence to rebut a claimant's attempt to amend and/or expand the description of the work-related injury.

Here, unlike in *Duffey*, Claimant did not produce any medical evidence to establish that, in addition to those diagnoses included within the accepted work-related injury, he also sustained a lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy as a result of the August 25, 1999 work-related incident. In fact, the only petition pending before the WCJ for consideration was Employer's modification petition. Had Claimant desired to rely on the principles established by this Court in *Duffey*, Claimant should have filed a review petition seeking to amend the description of his work-related injury to include those additional diagnoses. If Claimant had done so, the WCJ could have consolidated Claimant's review petition with Employer's modification petition. Then, as part of the IRE proceedings, the WCJ could have considered not only whether Claimant's indemnity benefits should have been modified from total disability to partial disability as a result of Dr. Rodriguez's IRE determination but also whether the scope of Claimant's work-related injury had changed such that the description of his work-related injury should have been amended. If the WCJ determined that Claimant had met his burden on the review petition and amended the description of Claimant's work-related injury to include a lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy, the WCJ then could have considered Dr. Rodriguez's determination that Claimant had a whole-person impairment rating of 45% when ruling on Employer's modification petition.

Instead of proceeding in this manner, Claimant sought to rely exclusively on Dr. Rodriguez's testimony and opinions that those diagnoses were causally related to the work-related incident and that, when those diagnoses were included in the IRE determination, Claimant had a whole-person impairment rating of 45%. The WCJ, however, rejected Dr. Rodriguez's testimony and opinions in that regard on the basis that

Claimant's work-related injury had been described in numerous prior decisions and that such description had never been amended or expanded to include those additional diagnoses. Making this credibility determination and rejecting Dr. Rodriguez's testimony and opinions was certainly within the WCJ's purview as the factfinder. *See Verizon Pa. Inc.*, 116 A.3d at 1162. Thus, even if I were to assume that Dr. Rodriguez's testimony and opinions alone could, under some circumstance, support the WCJ's amendment of the description of the work-related injury, that is not what occurred here.

Moreover, I, like the WCJ, cannot put aside the fact that, throughout the parties' litigation of the various petitions filed in this matter, the description of Claimant's work-related injury always remained the same: a lumbar strain, a left knee contusion, chronic pain syndrome, and chronic adjustment disorder with anxiety and depression. In fact, at one point, Claimant filed a review petition, seeking to expand the description of his work-related injury to include additional injuries to his neck, cervical spine, and upper extremities, and the WCJ denied and dismissed that review petition. In addition, while Claimant may be correct that a WCJ previously ordered Employer to pay the medical bills incurred in connection with the surgeries performed on his lumbar spine in September 2007, Claimant wholly ignores that the Board, in affirming the WCJ's decision, specifically emphasized that the WCJ did not amend the description of the work-related injury but, instead, merely determined that those surgeries were causally related to the accepted work-related injury.[7] The Commonwealth Court, purportedly in reliance on

---

[7] The Opinion in Support of Affirmance (OISA) relies heavily on the fact that, in 2011, a WCJ made a "causality determination . . . for purposes of determining Employer's obligation to pay for specific medical care." (OISA at 11.) In the OISA's view, "[i]t is both absurd and unjust that Dr. Rodriguez could not consider [Claimant's lumbar disc protrusion or] spondylolisthesis [with lumbar radiculopathy] in assessing his impairment rating during the IRE merely because the NCP was never amended to include [those] condition[s]," as "Employer was required to pay for [Claimant's] surgery for [a lumbar disc protrusion or] spondylolisthesis [with lumbar radiculopathy] after a specific determination (continued…)

*Duffey*, disregarded this established law of the case and the WCJ's evidentiary weight and credibility determinations and concluded that the WCJ erred as a matter of law in constraining the IRE review to the description of the accepted work-related injury. As stated above, this is simply not the situation where *Duffey* was meant to apply.

that it was causally related to his 1999 work injury." (*Id.*) It is presumably on this basis that the OISA then concludes that the record refutes our "illusory due process concerns" because "Dr. Rodriguez's causality determination . . . flowed directly from the prior litigation in this case"—*i.e.*, "Employer had notice of [Claimant's lumbar disc protrusion or] spondylolisthesis [with lumbar radiculopathy] as far back as 2007, and it engaged in protracted but unsuccessful litigation to challenge its responsibility to pay for [Claimant's] surgeries that were necessarily premised on that diagnosis." (*Id.* at 10, 14.)

The OISA also freely admits, however, that an NCP is "the agreement between an employer or an insurer and a claimant regarding liability for the claimant's injury," that "[a]n NCP defines the compensable injury, and [that] a WCJ 'may, at any time, review and modify or set aside' an NCP." (*Id.* at 2 (quoting *Crozer Chester Med. Ctr. v. Dep't of Lab. & Indus., Bureau of Workers' Comp., Health Care Servs. Rev. Div.*, 22 A.3d 189, 197 (Pa. 2011), and Section 413(a) of the Act, 77 P.S. § 771).) Indeed, an NCP may be modified to correct a material mistake made at the time that the NCP was issued or to include "an increase, decrease, recurrence, or cessation of disability." *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009).

To allow a diagnosis to be considered an "impairment" for the purposes of an IRE when the NCP has not been amended to include that diagnosis as part of the description of the compensable injury will essentially hold an employer liable for injuries for which it did not agree to be responsible and/or for which a WCJ did not adjudicate it responsible by amending the NCP. Identification of compensable injuries in the NCP avoids confusion, uncertainty, and the need to sift through what could be rather voluminous medical records and/or records of prior proceedings to determine what injuries and medical bills the employer may be responsible for in the future. The fact that, here, Employer unsuccessfully litigated its responsibility to pay for the surgeries performed on Claimant's lumbar spine in September 2007 does not, as the OISA suggests, satisfy any due process concerns relative to Employer's liability for Claimant's lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy. The WCJ's decision related only to Employer's liability for the payment of the medical bills associated with those surgeries and not its liability for additional injuries that were never identified as compensable in the NCP. Claimant had the ability to seek an amendment to his NCP to include those injuries at any time but, for whatever reason, chose not to do so. As explained more fully above, the difference between this case and *Duffey* is that, in *Duffey*, the claimant sought to amend the NCP at the same time that the employer sought to modify the claimant's indemnity benefits pursuant to the results of the IRE. This is precisely why *Duffey* must be cabined to its facts.

## V. CONCLUSION

For all of these reasons, I would conclude that the Commonwealth Court impermissibly expanded this Court's holding in *Duffey* so as to usurp the WCJ's authority to determine the nature and extent of a compensable injury and substituted its assessment of the credibility of the witnesses for that of the WCJ when it reversed the Board's decision and remanded the matter for the reinstatement of Claimant's total disability benefits.  Accordingly, I would reverse the Commonwealth Court's order.

Chief Justice Todd joins this opinion in support of reversal.